The **DOUGLAS COUNTY BOARD OF COMMISSIONERS,** Petitioner–Appellee,

v.

The **PUBLIC UTILITIES COMMISSION OF the STATE OF COLORADO and Commissioners Arnold H. Cook, Ronald L. Lehr, and Gary L. Nakarado, and the Public Service Company of Colorado,** Respondents–Appellants.

No. 91SA79.

Supreme Court of Colorado, En Banc.

May 11, 1992.

As Modified on Denial of Rehearing June 1, 1992.

Sherman & Howard, Steven H. Denman, Sean C. Lindsay, Denver, J. Mark Hannen, Douglas County Atty., Castle Rock, for petitioner-appellee.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Mark W. Gerganoff, Asst. Atty. Gen., Denver, for respondents-appellants.

Kelly, Stansfield & O'Donnell, Kenneth V. Reif, Denver, for Public Service Co.

Lawrence F. Herbert, pro se, amicus curiae.

Chief Justice ROVIRA delivered the Opinion of the Court.

The Public Utilities Commission of the State of Colorado (PUC) and the Public Service Company of Colorado (PSCo) appeal an order of the Douglas County District Court, reversing a decision of the PUC which granted PSCo's application to upgrade an electric transmission line that runs through Douglas County.[1] The district court determined that: (1) The Douglas County Board of Commissioners (Douglas County) had standing to request judicial review of the action of the PUC; (2) the PUC acted in a quasi-judicial capacity in rendering its decision; and, (3) the public utilities exception to the Colorado Land Use Act, section 30–28–127, 12A C.R.S. (1986), is unconstitutional as applied because it does not set forth adequate guidelines for use by the PUC in determining whether to order improvements by a public utility which cause a modification to a county's master land use plan.

We agree with the first two rulings of the district court, but because we find that section 30–28–127 provides an adequate standard for the PUC, we reverse.

I

The parties do not dispute the facts as set forth here. PSCo has constructed a "wheel and spoke" transmission system in

---

**1.** This court has jurisdiction to review the district court decision pursuant to § 40–6–115(5), 17 C.R.S. (1984).

order to provide electric service to the Denver metropolitan area. The electric transmission line at issue here forms a "spoke" that runs from one of the inner power delivery points south to the Daniels Park Substation and Autotransformer located in Douglas County (hereinafter "Daniels Park transmission line"), thus passing through Denver, Arapahoe, and Douglas Counties. This transmission line presently has the capacity to conduct 115 kilovolts (kV) of electric current.

Citing increasing demand for electrical power in the southern metropolitan area, the need to improve power transfer capabilities of the whole system, potential overloading of transformers, and the need to improve system reliability, PSCo sought to upgrade the portion of the Daniels Park transmission line that runs through Douglas County so that it could carry 230 kV of electric current.

PSCo first attempted to obtain zoning approval to upgrade this transmission line from the Douglas County Board of Commissioners but the request was denied. Subsequently, PSCo filed an application with the PUC requesting permission to upgrade that portion of the line that passes through Douglas County. This request was made pursuant to the public utilities exception statute, section 30–28–127, 12A C.R.S. (1986), which authorizes the PUC to order improvements to public utility equipment (including power lines), although the improvement derogates from a county's adopted land use plan:

> None of the provisions of this part 1 [entitled "County Planning"] shall apply to any existing building, structure, or plant or other equipment owned or used by any public entity. After the adoption of a plan, all extensions, betterments, or additions to buildings, structures, or plant or other equipment of any public utility shall only be made in conformity with such plan unless, after public hearing first had, the public utilities commission orders that such extensions, betterments, or additions to buildings, structures, or plant or other equipment *are reasonable* and that such extensions, betterments, or additions *may be made even though they conflict with the adopted plan.*

§ 30–28–127, 12A C.R.S. (1986) (emphasis added).

PSCo claimed that the requested upgrade was reasonable and thus should be allowed under this provision. Following numerous time extensions and a prehearing conference in which PSCo, Douglas County and several individual intervenors participated,[2] an administrative law judge (ALJ) for the PUC set a hearing date before the PUC to determine whether the upgrade was reasonable and should be ordered. By a written decision available to all parties, including Douglas County, the ALJ ordered that the hearing be conducted in three phases. Phase one would address the need for the upgraded line, the second phase would concern non-need and non-health considerations such as noise, land use, aesthetics, and property values, and the third phase would consider the health impacts of the upgraded line.

In September 1989, a hearing commenced which lasted five days, during which nineteen witnesses testified. Opponents, including Douglas County and the other individual intervenors, argued that the upgrade should not be approved, asserting that PSCo's load projections were inaccurate, that the upgrade was unnecessary, and that PSCo had failed to sufficiently explore other alternatives. Douglas County also argued that, if the upgrade was approved, the line should be buried.

Following the hearing and consideration of written statements of position, the PUC entered Decision No. 89–1622 granting PSCo's application to upgrade the Daniels Park transmission line to a capacity of 230 kV, subject to certain conditions.[3] The con-

---

**2.** These individual intervenors are not parties to this appeal, although one of the individual intervenors has entered an appearance as *amicus curiae.*

**3.** Specifically, the conditions were that:
 A. The upgraded lines shall be configured at 230/230kV;
 B. The lines shall be configured in reverse phase;

ditions were set as a result of the PUC's decision to implement a policy of prudent avoidance to minimize unknown risks of harm to health. The approval was based on the PUC's findings that the transmission line improvement was needed to maintain reliable service and was reasonably required for electrical service in the southeast area and Douglas County in particular. The PUC also found that the factors considered in phase two of the hearing—land use, noise, property values, and aesthetics—did not adversely affect the overall reasonableness of the transmission line upgrade. Addressing phase three, the health impacts of the upgrade, the PUC concluded that, as of the time of the decision, "no known or apparent adverse health effects existed resulting from electric and magnetic fields from low level overhead power transmission lines," and, therefore, these considerations did not justify disapproval of the reasonable request to upgrade the line. Finally, again citing the policy of prudent avoidance, the Commission engaged in balancing the costs of burying the power line against the benefits of burial and concluded that burial was not warranted.

Douglas County requested judicial review of the PUC's decision in the district court.[4] Although Douglas County raised numerous issues, the court resolved the matter by considering only three issues—standing, whether the PUC proceeding was quasi-legislative or quasi-judicial in nature, and the constitutionality of section 30–28–127 as applied. Finding that Douglas County had standing because it had suffered injury in fact to a legally protected interest, the court ruled that, in its application of section 30–28–127 to the facts in this case, the PUC acted in a quasi-judicial manner. The court then determined that due process requires that the PUC adopt rules and regulations setting forth the factors which it considers relevant in determining whether a proposed improvement is reasonable under section 30–28–127. Because the PUC applied section 30–28–127 without the benefit of such rules and regulations, the court found that Douglas County's procedural due process rights were violated. The court, consequently, reversed the decision of the PUC. Both PSCo and the PUC appealed.[5]

Because it has a bearing on the process due, we will first consider whether the PUC acted in a quasi-judicial or quasi-legislative manner. Then, we will consider whether Douglas County had standing to appeal the PUC's decision. Finally, in order to determine whether Douglas County's rights to procedural due process were violated, we will consider whether section 30–28–127 contains sufficiently definite standards which can be uniformly applied to control the exercise of administrative discretion by the PUC.[6]

---

C. The transmission lines shall be strung on single steel poles in lieu of the present lattice towers;

D. Conductors and other equipment shall be used which will mitigate noise effects of the lines;

E. To the extent feasible, the single steel poles shall be placed on the Public Service Company of Colorado right-of-way, taking into consideration other open right-of-way whether owned by Public Service Company of Colorado or not, which will maximize the distance of the poles from residential and other inhabited properties.

F. Public Service Company of Colorado shall comply with the Commission's discussion in the conclusion above to address demand side reductions and mitigations in future proceedings dealing with supply-side enhancements.

G. Public Service Company of Colorado shall submit to the Commission its plan for further research regarding electromagnetic fields and its survey of its electromagnetic fields. Such plan shall be submitted to the Commission in writing within 90 days of the effective date of this decision.

4. Douglas County initiated the review by filing an Application and Petition for Writ of Certiorari or Review, § 40–6–115(1), 17 C.R.S. (1984).

5. The PUC and PSCo filed separate notices of appeal and submitted separate briefs, addressing different issues on appeal. Consequently, at times we will refer to the arguments of the PUC or the arguments of PSCo, although the parties are co-appellants.

6. The district court determined that, in order for the PUC to provide procedural due process, it must "enact rules and regulations setting forth the factors which it will consider relevant when determining that it is reasonable to permit an exception for a utility" pursuant to section 30–

## II

Because it has a bearing on our determination of whether Douglas County has standing to seek judicial review of the PUC's decision, and because certain due process requirements are triggered when an administrative agency engages in quasi-judicial proceedings, *see* § 24–4–105, 10A C.R.S. (1988); *Schoenberg Farms, Inc. v. People*, 166 Colo. 199, 209, 444 P.2d 277, 282 (1968), we first determine the nature of the PUC's decision and the process by which that decision was reached.

■ Recently we described the framework to be used in distinguishing rule-making or quasi-legislative proceedings from adjudicatory or quasi-judicial proceedings. We stated that:

Agency proceedings often require application of both rule-making and adjudicatory authority because of the nature of the subject matter, the issues to be resolved, or the interests of parties or intervenors. In general, agency proceedings that primarily seek to or in effect determine policies or standards of general applicability are deemed rule-making proceedings. *Agency proceedings which affect a specific party and resolve particular issues of disputed fact by applying previously determined rules or policies to the circumstances of the case are deemed adjudicatory proceedings.* The determination of whether a particular proceeding constitutes rule-making requires careful analysis of the actual conduct and effect of the proceedings as well as a determination of the purposes for which it was formally instituted.

*Colorado Office of Consumer Counsel v. Mountain States Tel. & Tel. Co.*, 816 P.2d 278, 284 (Colo.1991) (citations omitted) (emphasis added).

The district court determined that the PUC action was quasi-judicial after considering both the effect of the decision and the method by which it was reached. The PUC argues, however, that because this action set public policy regarding the upgrade of transmission lines in Douglas County, did not relate only to an identifiable person or group, and was prospective in nature, it was a quasi-legislative action. We disagree and believe that this action is more properly categorized as quasi-judicial.

We have many times engaged in the fact-intensive analysis required to determine whether an administrative agency proceeding was quasi-legislative or quasi-judicial. The determination must focus on the nature of the governmental decision and the process by which that decision was reached and not solely on whether the legislative scheme that may exist imposes certain due process requirements such as notice and hearing. *See Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 627 (Colo.1988).

We initially focus, therefore, on the nature of the decision entered by the PUC in approving the upgrade. First, the PUC rendered its decision by applying the reasonableness standard already set forth in section 30–28–127 to the present or past facts relating to need, health concerns, and other non-need factors. Second, the parties adversely affected by the decision are identifiable. Douglas County, the creator of the master land use plan which did not include the upgraded power line, is adversely affected by this PUC decision which alters the land use scheme. While it is true that other parties, including individual Douglas County residents, are affected by the decision, this does not remove the decision from the realm of adjudicatory actions. As is often also the case in adjudications by the judicial branch, collateral effects to third parties result from adjudicatory proceedings. Nonetheless, where, as here, there are identifiable parties whose interests are being determined, that is a factor indicative of a quasi-judicial proceeding. Third, no new rule of general application resulted from the PUC proceeding. The result affected only the proposed

---

28–127. Despite the court's language that the constitutional violation was due to unconstitutional *application* of section 30–28–127, the court's decision is equivalent to a finding of facial unconstitutionality. Consequently, we will examine this statute's constitutionality on its face and in its application to the facts here.

upgrade in Douglas County and did not set forth standards to be used in determining how decisions on future upgrade proposals should be handled, but, instead, applied the already existent standard contained in section 30–28–127.

■ Finally, we note that the legislative scheme supports the conclusion that the PUC decision was adjudicative in nature. The public utilities exceptions statute, section 30–28–127, requires certain due process elements which indicate that the subject proceeding is quasi-judicial. This section requires a public hearing, which contemplates that notice be given to the community. Notice and a public hearing are two factors which we have previously found indicative of a quasi-judicial action. *Snyder v. City of Lakewood*, 189 Colo. 421, 425, 542 P.2d 371, 374 (1975), *overruled on other grounds, Margolis v. District Court*, 638 P.2d 297 (Colo.1981). Supported both by the nature of the decision and the statutory process requirements due, we conclude that the action by the PUC was quasi-judicial.

### III

We next consider whether Douglas County has standing to seek judicial review of the PUC's decision. The district court found that Douglas County had statutory standing pursuant to section 40–6–115(1), 17 C.R.S. (1984), because it was a party to the proceeding before the PUC, and pursuant to the test set forth in *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977).

■ Section 40–6–115(1) provides, in pertinent part, that "[t]he [public utilities]

commission and each party to the action or proceeding before the commission shall have the *right to appear* in the review proceedings." (Emphasis added.) The PUC and the PSCo argue that the right to initiate an appeal is different than the statutorily granted "right to appear." We disagree. Where they do not conflict, we look to the law of both the State Administrative Procedure Act, sections 24–4–101 to –108, 10A C.R.S. (1988 & 1991 Supp.) (the APA), and the public utilities statutes.[7] Section 24–4–106(4) of the APA provides that:

> [A]ny person adversely affected or aggrieved by any agency action *may commence an action* for judicial review in the district court within thirty days after such agency action becomes effective; but, if such agency action occurs in relation to any hearing pursuant to section 24–4–105 [adjudicatory determinations], then the person must also have been a party to such agency hearing.

(Emphasis added.) This provision authorizes a person who was a party to an adjudicatory determination by an administrative agency to initiate an appeal. Read together with section 40–6–115(1), this statute evidences a legislative intent to allow parties who appeared at the PUC proceeding to initiate an appeal. Since a county is a "person," as defined by section 24–4–102(12), then, if aggrieved, a county has a statutory right to commence an action for review of a PUC decision.

■ We agree with the district court that Douglas County has also met the test for standing as set forth in *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). *Accord O'Bryant v. Public*

---

7. In analyzing the law relating to the PUC, we are guided by the applicable provisions in both the APA and the Public Utilities Law, §§ 40–1–101 to.40–7–111, 17 C.R.S. (1984 & 1991 Supp.). Article 4 of title 24, governing rule-making and licensing procedures by state agencies, applies to the acts of the PUC except where there exists a specific provision in title 40, articles 1 to 13 of the public utilities law. § 40–6–101(1), 17 C.R.S. (1991 Supp.). Therefore, where provisions of public utilities law conflict with the APA, the public utilities law governs. *Home Builders Ass'n of Metropolitan Denver v. Public Utils. Comm'n*, 720 P.2d 552, 559 (Colo.1986).

The PUC qualifies as an administrative agency subject to the provisions of the State Administrative Procedure Act, *see* § 24–4–101, 10A C.R.S. (1988), pursuant to the definition of "agency" in section 24–3–101, 10A C.R.S. (1988):
As used in this article, the term "agency" means every agency in the executive branch of the state government which is required by the constitution or statutes of the state to exercise discretion or to perform judicial or quasi-judicial functions. As so qualified, the term "agency" includes, but is not limited to, boards, commissions, departments, divisions, offices, and officers.

*Utils. Comm'n,* 778 P.2d 648, 652 (Colo. 1989). Under this test, one must demonstrate both injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions and that the injury is due to the action of the defendant.

The injury in fact requirement is derived from the state constitutional limitation on judicial power requiring the presence of an actual controversy, which is demonstrated by real injury. *Colo. Const.* art. VI, § 1; *Maurer v. Young Life,* 779 P.2d 1317, 1323 (Colo.1989). Thus, the party initiating an appeal must demonstrate that it has a legally protected interest derived from either statute or the constitution. Douglas County's interest is derived from the statutory scheme of the county planning provisions which authorizes counties to make and enforce land development or zoning regulations. §§ 30–28–101 to –137, 12A C.R.S. (1986 & 1991 Supp.). PSCo and the PUC argue that since this authority is only statutorily derived, and is specifically limited by the language in section 30–28–127, which provides for the PUC to approve a betterment although it may conflict with a land use decision of a county, Douglas County does not have a legally protected interest here. However, using an analogous argument, the imposition of the reasonableness standard in section 30–28–127 also limits the PUC's power to approve improvements to instances where the improvement is reasonable. Consequently, if, as Douglas County asserts, the improvement was unreasonable or ordered without sufficient guidelines for determining reasonableness, then the PUC has transgressed the boundaries of the county's authority to make land use decisions which are only subject to an overriding by the PUC when an improvement is properly deemed reasonable. We conclude, therefore, that Douglas County has a legally protected interest.

This interest has been injured by the PUC's approval of an upgrade which derogates from the county's land use plan. As the district court found, the decision of the PUC has interfered with the county's right to plan and zone property.

PSCo and the PUC argue that, by virtue of the constitutional grant of power to the PUC to regulate the facilities of a public utility, *see Colo. Const.* art. XXV, the PUC is a superior state agency, thereby divesting Douglas County of the power to obtain judicial review of the PUC's actions. By applying the general rule that counties do not have standing to obtain judicial review of a decision of a superior state agency, *see Lamm v. Barber,* 192 Colo. 511, 519, 565 P.2d 538, 544 (1977), PSCo and the PUC argue that Douglas County lacks standing here to seek judicial review of the PUC's decision. We do not however find this rule applicable here.

In *Lamm v. Barber,* we explained the history of this rule as applied in mandamus proceedings. We found that, while the county assessors had discretion in determining how to implement increases in assessment abstracts as ordered by the State Board of Equalization, the county assessors had no discretion to determine whether or not to implement the increases. Consequently, since by statute the assessors were required to carry out the ordered increases, they had no standing to question the constitutionality of a statute, and a writ in the nature of a mandamus was issued compelling the assessors to perform their statutory duties. *See Lamm,* 192 Colo. at 519–20, 565 P.2d at 544–45; *Board of County Comm'rs of Otero County v. State Bd. of Social Services,* 186 Colo. 435, 442, 528 P.2d 244, 248 (1974) (Judicial review of final actions of State Board of Social Services is limited to those parties to the proceeding before the board whose rights, privileges and duties are distinct from those of the state and the county. As an arm of the state, the State Board of Social Services does not fit within this definition of party.).

In *Maurer v. Young Life,* 779 P.2d 1317, 1320 (Colo.1989), we held that standing under this rule is precluded when two conditions are met: "(1) the agency seeking judicial review is subordinate to the agency whose decision is sought to be reviewed, and (2) no statutory provision confers a right on the subordinate agency to seek

judicial review of the superior agency's decision." Here, the PUC's superiority over a county's decisions regarding land use is statutorily limited by the requirement that the PUC first determine the reasonableness of any improvement that derogates from the land use plan. Furthermore, in this action, a county is not under any statutory mandate to follow an order of the PUC, as in *Lamm*, but has separate power to enact a land use scheme subject to improvements deemed reasonable by the PUC. In *Maurer*, we stated that, even assuming that the agency seeking. review was subordinate, where that agency had statutory authority to seek review, the general rule did not apply. Following this reasoning, even assuming that Douglas County is subordinate to the PUC, section 40–6–115(1), when read in conjunction with section 24–4–106(4), confers statutory authority for the county to seek review.

Accordingly, we conclude that Douglas County does have standing to seek judicial review of the PUC's decision.

### IV

■ When an agency acts in a quasi-judicial capacity, procedural due process requires that the agency give notice and afford a hearing to affected individuals. *Schoenberg Farms, Inc. v. People*, 166 Colo. 199, 209, 444 P.2d 277, 282 (1968). The district court here found that "the power delegated by the legislature to the PUC in the public utilities exceptions statute is extremely broad. That is, the PUC can permit exceptions which are 'reasonable.' The breadth of this power assumes that the PUC, through rules and regulations, will provide its own guidelines and regulations." The district court further found that due process requires the PUC to promulgate rules and regulations sufficiently specific to inform parties to a hearing what factors will be considered relevant in making the reasonableness determination. We believe that the requirement in section 30–28–127 that the PUC find the proposed improvement reasonable before ordering an upgrade to equipment contrary to a county land use plan, read in the context of the statutory scheme covering county planning along with the rules that the PUC has adopted, provides an adequate standard.[8]

■ We pay heed to the broad power granted the PUC under the Colorado Constitution:

In addition to the powers now vested in the General Assembly of the State of Colorado, *all power to regulate the facilities* ... including facilities ... within home rule cities and home rule towns, *of every corporation*, individual, or association of individuals, wheresoever situate or *operating* within the State of Colorado ... *as a public utility* ... is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate.

Until such time as the General Assembly may otherwise designate, said authority *shall be vested in the Public Utilities Commission of the State of Colorado;* provided however, nothing herein shall affect the power of municipalities to exercise reasonable police and licensing powers, nor their power to grant franchises; and provided, further, that nothing herein shall be construed to apply to municipally owned utilities.

*Colo. Const.* art. XXV (emphasis added). The PUC, by this provision, is constitutionally granted greater authority than most other administrative agencies. We believe, therefore, that the legislature is authorized, accordingly, to delegate more authority to the PUC than to agencies which are

---

8. The district court found that the infirmity in section 30–28–127 constituted a due process violation. Yet, the court's conclusion that the reasonableness standard provided by the statute required the adoption of further regulations was based on an analysis which employed tests used for determining whether the legislature engaged in excessive delegation of authority to the PUC. We have previously recognized that "[a]lthough the protections afforded by these doctrines will often overlap, they are not coextensive." *Cottrell v. City & County of Denver*, 636 P.2d 703, 709 n. 12 (Colo.1981). Nonetheless, it is these principles governing legislative delegation that best guide the determination of whether the PUC can constitutionally operate under a broad decision-making standard.

not recognized by the constitution as holding such broad powers. Nevertheless, we analyze the sufficiency of the section 30–28–127 standard under the more stringent tests applied to determine the constitutionality of legislative delegation to other agencies.

Previously, we articulated the test to be met in determining the sufficiency of legislative standards for the guidance of administrative actions:

> The guiding consideration is whether these constraints are *sufficient to insure that administrative action will be rational and consistent in the first instance and that subsequent judicial review of that action is available and will be effective.* Therefore, the appropriate analysis is to determine first whether sufficient statutory standards or safeguards exist to fulfill those functions. Second, if those safeguards are inadequate, it must be determined whether additional administrative standards and safeguards accomplish the necessary protection from arbitrary action.

*Cottrell v. City & County of Denver,* 636 P.2d 703, 709–10 (Colo.1981) (citations omitted) (emphasis added). If statutory standards are adequate, further analysis under the *Cottrell* standard becomes unnecessary. *Loup–Miller Constr. Co. v. City & County of Denver,* 676 P.2d 1170, 1177 (Colo.1984).

In finding that a failure by the PUC to adopt further regulations resulted in a violation of Douglas County's procedural due process rights, the district court relied on our decision in *Elizondo v. State Department of Revenue,* 194 Colo. 113, 570 P.2d 518 (1977). In *Elizondo,* we found that the statute governing issuance of probationary driver's licenses failed to adequately protect a driver's right to procedural due process in determining whether or not a probationary license should be granted. Because one of the applicable statutes granted the director of the Motor Vehicle Division the power to promulgate rules and regulations, we found that this suggested that the agency should adopt regulations to limit the exercise of the broad discretionary power. The agency failed to adopt such

regulations. We concluded that "neither the public nor the courts have any means of knowing in advance what evidence might be considered material to any particular decision. Nor is there any assurance that each hearing officer will not, consciously or subconsciously, follow standards quite different from those applied by his or her colleagues." 194 Colo. at 118, 570 P.2d at 521. However, a significant difference exists between the statute at issue in *Elizondo* and the statute at issue here. Here, unlike in *Elizondo,* the statute mandates that the PUC make a finding of reasonableness before approving an upgrade. In *Elizondo,* there was no requirement that the hearing officer meet any standard before determining whether to grant a probationary license. Most important, the delegation to the PUC of discretion to determine what is reasonable comports with our past expressions of what constitutes sufficient standards to guide an agency.

In *Cottrell v. City & County of Denver,* 636 P.2d at 708, we stated that:

> [I]n applying the standards test this court has repeatedly emphasized the impracticality and inappropriateness, in many contexts, of requiring anything more than the most broad and general standards to guide administrative action.... Thus, we have held *in appropriate circumstances that limitation of delegated authority by the mere requirement of 'reasonableness' is sufficient to satisfy the standards requirement.*

(Citations omitted.) Especially in the case of the PUC, which has authority over public utilities encompassing many areas, *see* § 40–2–108, 17 C.R.S. (1991 Supp.), including common carriers, pipeline, gas, electrical, telephone, telegraph, and water corporations, *see* § 40–1–103, 17 C.R.S. (1984 & 1991 Supp.), promulgation of more specific guidelines for determining reasonableness under section 30–28–127 would be inappropriate. For example, factors worthy of consideration where an upgrade to a water tower is proposed would vary greatly from the factors appropriate for consideration

where an electrical line improvement is requested.

We note that the PUC has promulgated a rule setting forth the construction requirements to be observed by public utilities offering electric service. Specifically, this rule requires an electric utility engaged in either new construction or the extension of transmission service to comply with the minimum standard of accepted good engineering practice defined by the National Electric Safety Code. Rule 18, 4 C.C.R. 723–3 (1984). This rule provides guidance to the PUC in determining what constitutes a reasonable improvement. That is, an upgrade would be reasonable only if constructed in accordance with at least minimum engineering standards. Additionally, the PUC requires electric utility companies to submit to the Commission on a regular basis the companies' distribution line extension policies. The purposes of this rule are:

> (1) [T]o set forth the service connection and distribution line extension requirements to be observed by utilities offering electric service; (2) to protect each utility against making unwarranted or uneconomical investment which might react adversely through rates or service upon existing customers; (3) to recognize clearly the relationship between rates and investment and remove the previous promotional nature of the revenue guarantee methodology; and (4) to provide for the classification of electric distribution service and the appropriate terms and conditions under which service would be extended to same.

Rule 31, 4 C.C.R. 723–3 (1984). By this rule, the PUC has indicated that the effect of an improvement or extension to an electric distribution line on the rates charged existing customers is a consideration for determining the reasonableness of the improvement. These rules provide, therefore, some regulatory framework for the PUC's determinations of reasonableness of an upgrade.

Additionally, we find it significant that the legislature included section 30–28–127 within article 28 which governs county land use decisions. Section 30–28–107, 12A C.R.S. (1986), sets forth the purposes for a county master plan:

> The county or regional master plan shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted, and harmonious development of the county or region which, in accordance with present and future needs and resources, will best promote the health, safety, morals, order, convenience, prosperity, or general welfare of the inhabitants, as well as efficiency and economy in the process of development, including such distribution of population and of the uses of land for urbanization, trade, industry, habitation, recreation, agriculture, forestry, and other purposes as will tend to create conditions favorable to health, safety, energy conservation, transportation, prosperity, civic activities, and recreational, educational, and cultural opportunities; will tend to reduce the wastes of physical, financial, or human resources which result from either excessive congestion or excessive scattering of population; and will tend toward an efficient and economic utilization, conservation, and production of the supply of food and water and of drainage, sanitary, and other facilities and resources.

While these considerations are designated guidelines for the county or regional planning commissions, we believe they are also factors for the PUC to consider in determining whether any improvement or upgrade in accordance with section 30–28–127 is reasonable. The betterments must be "reasonable ... even though they conflict with the adopted plan." § 30–28–127, 12A C.R.S. (1986). The reasonableness standard is, therefore, interwoven with the adopted land use plan which is subject to all the above considerations. Consequently, we believe the statutory framework, especially the placement of the public utilities exception statute within the article encompassing master land use plans, evinces an intent that the PUC should consider

these factors in arriving at its decision.[9] This greatly constrains the determination of reasonableness in that reasonableness must be determined in light of all these considerations. As a result, we find that there was adequate guidance provided by the legislature without the requirement that the PUC promulgate further rules and regulations.[10]

 Finally, Douglas County's procedural due process rights were not violated by application of section 30–28–127. In fact, the policies of providing the public with advance knowledge of what evidence might be considered material to any particular decision, and of assuring that standards will not, consciously or subconsciously, be applied in a different manner by different ALJs were sufficiently supported by the issuance of the decision in which the ALJ set forth the factors to be considered in the hearing on reasonableness of the proposed upgrade. Additionally, the factors considered in the three-phase hearing were in accordance with the concerns set forth in section 30–28–107. The PUC considered the need for the upgrade, land use, aesthetics, property values and health impacts. These considerations are clearly encompassed within the direction provided by section 30–28–107 for master plan development, and so the PUC correctly considered whether the upgrade was a reasonable derogation from a master plan adopted after considering these many factors. The fact that a public hearing was scheduled, the issues to be addressed were made public, evidence and cross-examination were permitted and a lengthy decision by the PUC explaining its finding of rea-sonableness was issued all support our finding that Douglas County's procedural due process rights were sufficiently protected.

## V

It is unclear from the district court's order whether it considered the other issues raised by Douglas County. The court stated that it "resolves this matter by considering three issues...." Section 40–6–115(3), 17 C.R.S. (1984), governing district court review of final decisions of the PUC, states in part: "So far as necessary to the decision and where presented, the district court shall decide all relevant questions of law and interpret all relevant constitutional and statutory provisions." Since consideration of only three issues was all that was necessary for disposition of this case in the district court, the court did not need to address the other issues. Consequently, since those issues are not properly before us, we will not consider them now.

Having thus determined that section 30–28–127 can be and was constitutionally applied without promulgation of further rules and regulations, we reverse and remand to the district court with directions to consider the remaining issues raised by Douglas County in its petition for writ of certiorari pursuant to section 40–6–115(1), 17 C.R.S. (1984).

9. We have previously recognized that the absence of a specific provision granting authority to a county to condition approval of a planned unit development on improvement of an access road does not mean that the county lacks such authority. Instead, we found that authority present by reading together the statutes governing master land use plans, zoning, subdivision and planned unit development. *Beaver Meadows v. Board of County Comm'rs,* 709 P.2d 928, 935 (Colo.1985). Likewise, here, no specific statute sets forth factors for the PUC to consider in determining what betterments are reasonable, but reading the public utilities exception statute in the context of the framework within which it is included, we find the factors in section 30–28–107 are applicable considerations.

10. Contrast this case with *Beaver Meadows,* in which we held that regulations prescribing design characteristics and cost-sharing criteria for access roads were necessary to supplement the county's general authority to condition approval of a planned unit development on improvement of an access road. In the absence of regulations prescribing such criteria, the statutes and regulations, taken in combination, provided insufficient standards and safeguards to satisfy the requirements of *Cottrell. Beaver Meadows,* 709 P.2d at 937–38.