DOUGLAS COUNTY BOARD
OF COMMISSIONERS,
Petitioner–Appellee,

v.

The PUBLIC UTILITIES COMMISSION
OF the STATE OF COLORADO; Com-
missioners Arnold H. Cook, Ronald L.
Lehr, and Gary L. Nakarado; and the
Public Service Company of Colorado,
Respondents–Appellants.

No. 92SA460.

Supreme Court of Colorado,
En Banc.

Jan. 10, 1994.

Rehearing Denied Jan. 31, 1994.

Denman & Associates, P.C., Steven H. Denman, Denver, J. Mark Hannen, Douglas County Atty., Castle Rock, for petitioner-appellee.

Gale Norton, Atty. Gen., Raymond Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice Knaiser, Deputy Atty. Gen., Larry Williams, First Atty. Gen., Mark W. Gerganoff, Asst. Atty. Gen., Denver, for respondents-appellants Public Utilities Com'n and Com'rs.

LeBoeuf, Lamb, Leiby & MacRae, Kenneth V. Reif, Denver, for respondent-appellant Public Service Co.

Chief Justice ROVIRA delivered the Opinion of the Court.

The Public Utilities Commission of the State of Colorado (PUC) and the Public Service Company of Colorado (PSCo) appeal the order of the Douglas County District Court setting aside the PUC's grant of PSCo's application to upgrade an electric transmission line. We reverse.

I

Due to the increasing demand for electrical power in the south Denver metropolitan area, the need to improve power transfer capabilities of the entire metro-area system, potential overloading of transformers, and the need to improve system reliability, PSCo sought to upgrade a portion of the metro-area electrical transmission system known as

the Daniels Park transmission line. That line runs through a number of counties, including Douglas County. Currently, the line is capable of conducting 115 kilovolts (kV) of electric current. PSCo sought to upgrade the line to enable it to conduct 230kV of electric current.

In 1987, PSCo filed an application in Douglas County pursuant to Title 30, 12A C.R.S. (1986), for zoning approval to upgrade the existing transmission line. In December 1988, the Douglas County Board of Commissioners (Douglas County) denied the application, concluding that it was inharmonious with Douglas County's master zoning plan. See § 30–28–107, 12A C.R.S. (1986).

PSCo then filed an application with the PUC pursuant to section 30–28–127, 12A C.R.S. (1986), which authorizes the PUC to order improvements to public utility equipment, including electric transmission lines, even though the improvement is disaccordant with the county's adopted land use plan. PSCo alleged that because the requested upgrade is "reasonable," it should be built in spite of the fact that it may conflict with Douglas County's master zoning plan.

An Administrative Law Judge ordered that the hearing before the PUC be conducted in three phases. Phase one would address the need for the upgraded line, phase two the non-need and non-health considerations, and phase three the health impacts, if any, of the upgraded line.[1] Nineteen witnesses testified in the course of a five-day hearing before the PUC. In December 1989, the PUC entered its decision in Docket No. 89A–028E, granting PSCo's application to upgrade the Daniels Park transmission line to a capacity of 230kV, subject to seven conditions.[2] The approval was based on the PUC's finding, *inter alia*, that the transmission line upgrade was needed to maintain reliable service and was reasonably required for electrical service in the southeast area of Douglas County.

Douglas County sought judicial review pursuant to section 40–6–115(1), 17 C.R.S. (1984). Though Douglas County raised several issues for review, the district court resolved the case by considering only three of those issues. See *Douglas County Bd. of Comm'rs v. Public Serv. Co. of Colo.*, 829 P.2d 1303 (Colo.1992) (*Douglas County I*). The district court concluded, *inter alia*, that the PUC was required to promulgate rules and regulations setting forth the factors the PUC considers relevant in applying the criteria of section 30–28–127 that an upgrade be "reasonable," in order to comport with due process requirements. Because no such rules and regulations existed, the district court concluded that Douglas County had been denied procedural due process and, accordingly, set aside the decision of the PUC.

Both the PUC and PSCo appealed. We reversed, concluding that the regulatory framework for the PUC's determinations of reasonableness of an upgrade as well as the considerations set forth in section 30–28–107, 12A C.R.S. (1986), provided sufficient guidance to the PUC and parties appearing before it, to comport with requirements of procedural due process. *Douglas County I*, 829

---

1. Only the evidence presented during, and the PUC's conclusion regarding, phase one of the hearing are at issue in this appeal.

2. The PUC imposed the following conditions:
 A. The upgraded lines shall be configured at 230/230kV;
 B. The lines shall be configured in reverse phase;
 C. The transmission lines shall be strung on single steel poles in lieu of the present lattice towers;
 D. Conductors and other equipment shall be used which will mitigate noise effects of the lines;
 E. To the extent feasible, the single steel poles shall be placed on the Public Service of Colorado right-of-way, taking into consideration other open right-of-way whether owned by Public Service Company of Colorado or not, which will maximize the distance of the poles from residential and other inhabited properties.
 F. Public Service Company of Colorado shall comply with the Commission's discussion in the conclusion above to address demand side reductions and mitigations in future proceedings dealing with supply-side enhancements.
 G. Public Service Company of Colorado shall submit to the Commission its plan for further research regarding electromagnetic fields and its survey of its electromagnetic fields. Such plan shall be submitted to the Commission in writing within 90 days of the effective date of this Decision.

P.2d at 1310–13. We remanded the case to the district court to resolve the issues raised by the parties but not addressed in its initial opinion.

On remand, the district court characterized the remaining issues raised by Douglas County as falling into two general categories: procedural and evidentiary. Procedurally, Douglas County argued that the PUC violated its role as a neutral decision maker and unlawfully shifted the burden of proof. The district court rejected these claims on the grounds that the record did not support the conclusion that either the PUC failed to act in a neutral manner or that it unlawfully shifted the burden of proof.

With respect to the evidentiary claims, the district court concluded that substantial evidence was presented to support the PUC's conclusion that the potential adverse effects on health and property values resulting from the line upgrade did not mandate that the application be denied. The district court additionally rejected Douglas County's argument that the ruling of the PUC was internally inconsistent because it adopted certain "prudent avoidance concepts" as part of its decision while, at the same time, finding that there were no adverse health effects. *See supra* note 2. The district court reasoned:

> In determining whether to order the extension or addition pursuant to the public utilities exceptions section of the statute, one of the requirements is that the extension or addition be reasonable. There is nothing in the statute which requires that the PUC either accept or reject the PSC proposal without change. There is nothing in the statute which would prohibit the PUC from requiring that PSC meet certain conditions or make specific alterations

to its plan in order to determine the same reasonable.

The district court also considered whether substantial evidence had been presented to support the PUC's conclusion that the upgrade was "reasonable" because it was needed. The district court concluded that the evidence presented did not support the PUC's conclusion regarding need because no evidence was presented concerning demand-side alternatives.[3] "Without dispute," the court reasoned, "the establishment of need by PSC was essential to a conclusion that the extension or addition was reasonable. Rather than merely being an element of future actions, evidence of demand side alternatives or reductions was a recognized, necessary component of present need. No evidence was introduced by PSC to support this component." Thus, the district court concluded that the PUC's decision to permit the upgrade was not supported by the evidence and set aside the decision.

## II

On appeal the PUC and PSCo contend that the district court erred in concluding that consideration of demand-side alternatives is a prerequisite to a showing of reasonableness as required under section 30–28–127, before an application for a utility upgrade which conflicts with a county's land use plan can be granted.[4] We agree.

## A

Before considering the merits of the arguments on appeal, it is necessary to recognize the context in which they arise.

---

3. Demand-side alternatives include hardware, equipment, devices, or practices that could be installed or instituted which result in a reduced demand for electric energy or increased energy efficiency. They are distinguished from other conservation measures in that their implementation results from a utility-sponsored program. *See* 4 CCR 723–21(2.07) & (2.08) (1992). For example, had the PUC considered the results of the public's increased concern for the environment or energy-related effects from the building of new fuel-efficient homes, it would have been considering the effects of energy conservation on energy demand. In contrast, had the PUC con-

sidered the impact of developing programs to educate the public about the environmental benefits of conserving energy or sponsoring a program to encourage the construction of fuel-efficient homes, it would have contemplated demand-side alternatives to upgrading the line.

4. This is the sole issue presented for this court's review on appeal. Accordingly, other matters raised by Douglas County in its answer brief which have not been raised on cross-appeal and which have no bearing on this question need not be addressed.

In *Douglas County I*, 829 P.2d at 1312, we held that while section 30–28–107, sets forth the guidelines for a county master plan, it also establishes "factors for the PUC to consider in determining whether any improvement or upgrade in accordance with section 30–28–127 is reasonable." Given that "the reasonableness standard is ... interwoven with the adopted land use plan," *id.*, which is subject to the considerations set forth in section 30–28–107, that section is particularly pertinent to resolving the issue presented here.

Section 30–28–107 provides in part:

The county or regional master plan shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted, and harmonious development of the county or region which, in accordance with present and future needs and resources, will best promote the health, safety, morals, order, convenience, prosperity, or general welfare of the inhabitants, as well as efficiency and economy in the process of development, including such distribution of population and of the uses of land for urbanization, trade, industry, habitation, recreation, agriculture, forestry, and other purposes as will tend to create conditions favorable to health, safety, energy conservation, transportation, prosperity, civic activities, and recreational, educational, and cultural opportunities; will tend to reduce the wastes of physical, financial, or human resources which result from either excessive congestion or excessive scattering of population; and will tend toward an efficient and economic utilization, conservation, and production of the supply of food and water and of drainage, sanitary, and other facilities and resources.

In determining that this section sets forth applicable guidelines for the PUC when reviewing an application for a utility upgrade, nowhere did we either state or imply that energy conservation is the sole or determinative factor which must be addressed in order to support a finding of reasonableness. To the contrary, we held simply that the considerations set out in section 30–28–107 are factors the PUC should consider, not that any one was dispositive with respect to a finding of reasonableness. As such, nothing in *Douglas County I* suggests that consideration of specific conservation measures is a prerequisite to a finding of reasonableness under section 30–28–127.

■ Further, at the time of this proceeding, no rule or regulation had been promulgated by the PUC mandating that a public utility consider demand-side alternatives prior to, or in conjunction with, its application for a transmission line upgrade.[5] Thus, no statute, rule, regulation, or judicial mandate in force at the time of this proceeding supports the conclusion that consideration of demand-side alternatives was a prerequisite to a finding of reasonableness under section 30–28–127.

■ Moreover, assuming that the PUC was required to take into account energy conservation pursuant to section 30–28–107 before it could properly conclude that an electric line upgrade is reasonable, the evidence presented to the PUC was sufficient to support a conclusion that PSCo considered conservation measures before seeking permission to upgrade the Daniels Park line. William J. Martin, vice president of electrical engineering and planning for PSCo, testified that PSCo's projections of future energy requirements took into account both conservation and demand management such as improved efficiency of appliances, commercial motors, fluorescent lights, etc.[6]

---

5. In December 1992, following a lengthy process, the PUC formally adopted a regulation requiring utilities to consider demand-side measures in planning. *See* 4 CCR 723–21(5.04) & (5.06) (1992). Because this regulation was adopted in 1992, it does not apply to the upgrade application at issue here.

6. Counsel for Douglas County asked Martin "whether or not your load projections for the southeast area in Exhibit A–7 take into account the effect of conservation measures by customers?" Martin replied, "[t]hey do in fact, both conservation as well as what has come to be known as demand management."

Later, Commissioner Lehr inquired into exactly what was taken into account by PSCo with respect to energy conservation. Martin testified that PSCo applied its standard criteria and formula to account for future conservation measures—"a separate estimate made out of the work that the company has been doing with the

■ Furthermore, assuming that energy conservation is a prerequisite to a finding of reasonableness, this assumption does not lead invariably to the conclusion that demand-side alternatives must be taken into account. To the contrary, demand-side alternatives are only one of many possible conservation measures that could be considered. *See supra* note 3. As the testimony of Martin shows, PSCo did consider energy conservation in its calculation of future energy needs, though it did not consider demand-side alternatives.

### B

■ The district court based its conclusion that demand-side alternatives were a prerequisite to a finding of reasonableness on the wording of the PUC's order.

In granting PSCo's application, the PUC imposed seven conditions. One of those conditions was that the PUC "comply with the Commission's discussion in the conclusion above to address demand side reductions and mitigations in future proceedings dealing with supply-side enhancements." *See supra* note 2. The discussion referred to in this condition arose as a result of Martin's statement that PSCo had not considered demand-side alternatives in assessing the need to upgrade the Daniels Park line. In its conclusion, the PUC stated:

> [P]ublic Service should be on notice that it is no longer acceptable to appear before the Commission to seek supply side enhancements to its system without apprising the Commission what efforts have been made, together with the results of those efforts, to reduce or mitigate the necessity of supply side enhancements with demand side alternatives. Public Service witness Mr. Martin acknowledged that demand side alternatives are a legit[i]mate Commission concern and will have to be addressed in future proceedings dealing with supply side enhancements. We find that Mr. Martin's commitment, presumably made with the knowledge and approval of Public Service, should be a further condition to the approval of this application.

Based on this conclusion and the condition imposed as a result, the district court concluded that "[d]emand side alternatives or reductions were clearly relevant and highly significant portions of the needs phase of this particular hearing." As such, the district court reasoned that "[w]ithout dispute, the establishment of need by PSC was essential to a conclusion that the extension or addition was reasonable. Rather than merely being an element of future actions, evidence of demand side alternatives or reductions was a recognized, necessary component of present need. No evidence was introduced by PSC to support this component." Thus, the district court concluded that "[b]ecause there was a lack of substantial evidence concerning PSC's need to upgrade the line, the PUC decision is not based on evidence introduced at the evidentiary stage of this process and its order permitting the upgrade is not supported."[7]

---

Commission and the staff...." This response led Commissioner Lehr to comment that "you haven't done any different or special work on this projection for southeast Denver that is different than what you have done overall to your system in your annual planning exercise." Martin agreed PSCo had not.

Thus, while it is not clear precisely what conservation measures PSCo considered, it is clear that some measures were taken into account. Further, because Martin testified that the estimate was based, at least in part, on work PSCo had been doing with the PUC, it is safe to assume that the PUC had a fairly clear understanding of what conservation measures PSCo had considered in calculating its projections of future energy needs.

7. The district court first noted that Martin testified that PSCo had not considered demand-side

alternatives to upgrading the line. The district court went on to state that "[t]his failure and lack of evidence was significant to the PUC." The only facts cited in support of this conclusion is the PUC's statement in its conclusion regarding the need for PSCo to present evidence of demand-side alternatives in the future, *see supra* p. 924, and the condition imposed by the PUC on the granting of this application, *i.e.*, that PSCo consider demand-side alternatives in the future. *See supra* note 2. Immediately after quoting those statements, the district court concluded that consideration of demand-side alternatives was a prerequisite to a finding of reasonableness. Thus, a plain reading of the district court's order makes it perfectly clear that the primary, if not exclusive, basis for its conclusion regarding demand-side alternatives was the PUC's imposition of future conditions on PSCo.

In so holding, the district court substituted its judgment regarding what factors should have been considered in assessing *this* application from the factors the PUC considered. The PUC clearly was aware that no evidence was presented by PSCo regarding demand-side alternatives. In fact, the PUC noted the absence of such evidence three times in its written order granting PSCo's application. Nevertheless, the PUC concluded that "in order for Public Service to provide adequate electrical service in that southeast load area, its amended proposal to upgrade its existing overhead 115/115kv transmission line to a 230/230kv transmission line ... is reasonable and should be approved." Clearly, the PUC was not of the opinion that consideration of demand-side alternatives was a prerequisite to a finding of reasonableness under section 30–28–127.

 The fact that the PUC imposed a condition on the granting of the application in no way alters this conclusion. The PUC stated that PSCo "shall comply with the Commission's discussion in the conclusion above ... *in future proceedings...*." (Emphasis added). In its conclusion, the PUC stated that "*it is no longer acceptable* to appear before this Commission" without presenting evidence of demand-side alternatives. (Emphasis added). These statements unambiguously evince the fact that the PUC did not conclude that demand-side alternatives were necessary to determining the reasonableness of the upgrade applied for in this proceeding. Rather, the PUC determined only that such evidence must be presented in the future. While the district court may

have been correct in observing that imposing prospective conditions like these were inappropriate in the context of a quasi-judicial proceeding, that fact cannot be used to apply these future conditions to present applications.[8] In short, it is simply illogical to conclude that future conditions which themselves are improperly imposed, may constitute appropriate and binding present conditions.[9] Therefore, we reject the district court's conclusion that by imposing this future condition on PSCo, the PUC thereby required that this condition be met in this case.

We reject Douglas County's suggestion that the PUC's order must be set aside because no evidence was presented concerning demand-side alternatives. For the reasons stated above, such alternatives were not required to be considered in this proceeding before a finding of reasonableness could be made. At the time of this hearing, there was no statutory, regulatory, or judicially mandated requirement that demand-side alternatives be considered. Moreover, nothing in the PUC's order properly can be read to create such a requirement applicable to this proceeding.

We similarly reject Douglas County's contention that *Caldwell v. Public Utilities Commission,* 200 Colo. 134, 613 P.2d 328 (1980), mandates that we uphold the district court's ruling. In *Caldwell,* PSCo attempted to include advertising expenditures in its calculation of operating expenses used to determine electrical rates. Intervenors challenged this action arguing that advertising was merely promotional and not useful to ratepayers and, therefore, should not be in-

---

8. It should be noted, however, that it is far from clear whether this observation by the district court is correct. For example, in *Douglas County I,* we noted that "[a]gency proceedings often require application of both rule-making and adjudicatory authority because of the nature of the subject matter, the issues to be resolved, or the interests of parties or intervenors." *Douglas County I,* 829 P.2d at 1307 (quoting *Colorado Office of Consumer Counsel v. Mountain States Tel. & Tel. Co.,* 816 P.2d 278, 284 (Colo.1991)). Similarly, we previously have noted that the commission may, in an adjudicative hearing, issue rules which are interpretive in nature or a statement of agency policy without the requirement of engaging in statutory rulemaking. *See Charnes v. Robinson,* 772 P.2d 62, 66 (Colo.1989)

("in general, an agency may make policy through either its adjudicatory or its rulemaking power").

9. Ironically, the district court seemed to acknowledge this fact when it concluded that the PUC's requirement that PSCo adopt, in the future, certain prudent avoidance measures did not render the PUC's grant of the application erroneous. As the district court recognized:

There is nothing in the statute which requires that the PUC either accept or reject the PSC proposal without change. There is nothing in the statute which would prohibit the PUC from requiring that PSC meet certain conditions or make specific alterations to its plan in order to determine the same reasonable.

cluded in the accounting figures used to set rates.

We held that PSCo provided inadequate evidence to support its advertising expenditures, and that the PUC approved the expenditures without the support of substantial evidence in the record. *Id.* at 137, 613 P.2d at 331. In the course of reaching that conclusion, the court observed that "[r]ather than indicating which evidence it adopts as competent ... the commission issued a veiled warning to the PSC that it must, *in the future,* prove the benefit its customers derive from the advertisements or the commission might have to disallow advertising as an operational expense entirely." *Id.* at 139, 613 P.2d at 332.

Contrary to Douglas County's suggestion, we did not reject the PUC's decision regarding advertising expenditures because it made a "veiled warning" to more adequately account for the expenditures in the future. Rather, we determined that the PUC's warning concerning future hearings was insufficient to conclude that PSCo had met its burden of showing that the expenditures at issue complied with *pre-existing,* and very specific, guidelines adopted by the PUC to determine when advertising expenditures could be classified as an operating expense. The PUC's warning was "insufficient to permit the inference that the advertisements submitted to the commission for inclusion in rate making expenses are within acceptable categories." *Id.* Accordingly, Douglas County's assertion that our holding and analysis in *Caldwell* mandates a result contrary to that reached today lacks merit.

## C

█ In reviewing the order of the PUC, we must determine whether its decision is supported by substantial evidence in the record. *Home Builders Ass'n v. PUC,* 720 P.2d 552, 560 (Colo.1986).

Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," ... and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of the facts for the jury. *Colorado Mun. League v. Mountain States Tel. & Tel. Co.,* 759 P.2d 40, 44 (Colo.1988).

Substantial evidence was presented to the PUC to support the conclusion that the Daniels Park line upgrade was reasonable. Martin testified extensively regarding future load requirements and the difficulty PSCo would encounter in meeting that demand in the absence of the line upgrade. He also testified regarding the current inability of the system to provide power to a large portion of the metro-Denver area in the event of a single contingency outage. Detailed testimony was presented on how those load requirements were calculated, the present capacity of the system, and the future capacity following the upgrade. The PUC concluded that this evidence supported the judgment that:

[I]n order for Public Service to provide adequate electrical service in that southeast load area, its amended proposal to upgrade its existing overhead 115/115kv transmission line to a 230/230kv transmission line running between Daniels Park substation in Douglas County [and] the Greenwood substation in Arapahoe County is reasonable and should be approved.

Because this conclusion is supported by substantial evidence in the record, the PUC did not exceed its statutory authority in granting PSCo's upgrade application.

█ The fact that no evidence was presented concerning demand-side alternatives in no way contradicts this conclusion, because such evidence was not considered by the PUC to be necessary to show that the transmission line upgrade was reasonable. Were we to hold that demand-side alternatives should have been considered as a necessary element by the PUC, we would be frustrating the broad authority vested in the PUC under the Colorado Constitution [10] and contradict-

---

**10.** Article XXV of the Colorado Constitution provides:

In addition to the powers now vested in the General Assembly of the State of Colorado, all power to regulate the facilities ... including

ing our prior recognition of that authority. *See Douglas County I*, 829 P.2d at 1310–11. Because the PUC has the knowledge and expertise to determine when, and under what circumstances, an upgrade is reasonable—and is constitutionally authorized to make such determinations—it is within its discretion to determine what factors are germane to assessing the reasonableness of an upgrade within the parameters recognized by this court in *Douglas County I*.

The district court erred in setting aside the order of the PUC granting PSCo's application. Accordingly, we remand the case to the district court with instructions to reinstate the order of the PUC.

ERICKSON, J., specially concurs in the Opinion of the Court.

SCOTT, J., dissents and LOHR, J., joins in the dissent.

Justice ERICKSON, specially concurring:

I specially concur. The Public Utilities Commission of the State of Colorado (PUC) had the authority to grant the Public Service Company of Colorado's (PSC) application to upgrade an electric transmission line. In addition, the record supports the PUC's decision to grant the PSC's application. Therefore, the district court erred in reversing the PUC.

In *Douglas County Board of Commissioners v. Public Service Company of Colorado*, 829 P.2d 1303 (Colo.1992), we held that section 30–28–107, 12A C.R.S. (1986), sets forth the applicable guidelines for the PUC to determine whether a requested utility upgrade is reasonable.[1] *Douglas County Board of Commissioners*, 829 P.2d at 1312, noted that the statute set out factors, none of which was necessarily determinative of, or prerequisite to, a finding of reasonableness. Therefore, the district court's holding that consideration of demand-side alternatives to an upgrade is a prerequisite to a finding of reasonableness pursuant to section 30–28–107 is error.

Because consideration of demand-side alternatives to an upgrade is not a necessary prerequisite to a showing of reasonableness under *Douglas County Board of Commissioners*, the PUC was free to consider demand-side alternatives, along with other factors, in determining if the upgrade was reasonable. As the majority holds, substantial evidence was presented to the PUC to support its finding of reasonableness.[2] Maj. op. at 926.

The limited issue presented for review is whether consideration of demand-side alternatives is a prerequisite to finding that a utility upgrade, which conflicts with a county's land-use plan, is reasonable. In my view, this issue is resolved by the fact that the record supports the PUC's finding of reasonableness. The consideration of demand-side alternatives was a factor, but was neither determinative of, nor a prerequisite to, the PUC's finding. Accordingly, I would reverse the district court.

Justice SCOTT, dissenting:

Because I do not believe that substantial evidence was presented to support the Public Utility Commission's conclusion that the upgrade of the Daniels Park transmission line was reasonable, I respectfully dissent. Pursuant to section 30–28–127, any improve-

---

facilities ... within home rule cities and home rule towns, of every corporation, individual, or association of individuals, wheresoever situate or operating within the State of Colorado ... as a public utility ... is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate.

Until such time as the General Assembly may otherwise designate, said authority shall be vested in the Public Utility Commission of the State of Colorado; provided, however, nothing herein shall affect the power of municipalities to exercise reasonable police and licensing powers, nor their power to grant franchises; and provided, further, that nothing herein shall be construed to apply to municipally owned utilities.

1. § 30–28–127, 12A C.R.S. (1986), requires a showing of reasonableness before an application for a utility upgrade which conflicts with a county's land-use plan can be granted.

2. As the majority notes, the record indicates that conservation measures were taken into account, maj. op. at 923 n. 6, although the majority states that evidence concerning demand-side alternatives (one possible energy conservation method) was not presented. Maj. op. at 926.

ments or upgrades which conflict with the county master plan must be "reasonable." To determine what is reasonable, we held in *Douglas County v. Public Utilities Com'n,* 829 P.2d 1303, 1312, (*Douglas County I*), that the Public Utilities Commission ("PUC") must consider the factors outlined in section 30–28–107, the statutory section setting forth the purposes for a county master plan. We found that the reasonableness standard is "interwoven with the adopted land use plan which is subject to all the above considerations [of section 30–28–107]," and that the application of the factors present in section 30–28–107, thus "greatly constrains the determination of reasonableness." Section 30–28–107 holds in pertinent part as follows:

> The county or regional master plan shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted, and harmonious development of the county or region which, *in accordance with present and future needs* and resources, will best promote the health, safety, morals, order, convenience, prosperity, or general welfare of the inhabitants....

(Emphasis added). Thus, under our decision in *Douglas County I,* it is clear that reasonableness must be determined in accordance with present and future need.[1] And even the PUC's order recognizes that to determine need, demand-side alternatives must be considered. In its findings of fact on the issue of least-cost alternatives, the PUC's order credited the testimony of William J. Martin, vice-president of electrical engineering and planning for the Public Service Company of Colorado ("PSCo"):

> Mr. Martin testified that Public Service had not analyzed the cost or benefit of demand management options as alternatives to the upgrade of the transmission line. Mr. Martin agreed that such an analysis was possible, *that demand reductions could eliminate the need for the upgrade* and that such a program of demand reduction should be compared to the supply side option of a transmission upgrade, both on the economics of such an alternative and as to factors external to the economics, such

as aesthetics, [noise], and exposure to electromagnetic fields. Mr. Martin also stated that he understood that the time had passed in which Public Service could approach this Commission with a supply side alternative in the absence of engineering and financing analysis of demand side options.

(Emphasis added). Therefore, on the record before us it is clear that demand-side alternatives must be considered in order to determine need, which is a prerequisite to determining reasonableness. It is undisputed that demand-side alternatives were not considered in the instant case.

In rejecting the district court's holding, the majority places undue emphasis on the district court's recognition that the PUC's order imposed the future requirement that before a supply-side enhancement may take place, demand-side alternatives must be considered. The majority states that "it is simply illogical to conclude that future conditions which themselves are improperly imposed, may constitute appropriate and binding present conditions," and rejects "the district court's conclusion that by imposing this future condition on PSCo, the PUC thereby required that this condition be met in this case." Maj. op. at 925. This argument, however, mischaracterizes the actual holding of the district court. In reality, it appears that the district court noted the PUC's imposition of the future condition, requiring an examination of demand-side alternatives, only as evidence that an examination of demand-side alternatives is critical to a determination of need. Nowhere in its ruling does the district court assert or imply that because the PUC imposed a future condition, that condition must be met in the instant case. After quoting the PUC order regarding the imposition of the future condition, the district court states that "[d]emand side alternatives or reductions were clearly relevant and highly significant portions of the needs phase of this particular hearing. In fact if demand-side reductions or alternatives had been adequately explored by PSCo, the need to upgrade may not have existed." Thus, finding that a review of de-

---

1. As noted by the majority the PUC hearing was divided into three phases; one of which was concerned solely with the need for the proposed improvement.

mand-side alternatives is a "recognized, necessary component of present need," the district court concluded that there was not substantial evidence concerning PUC's need to upgrade the line. *See Colorado Municipal League v. Mountain States Tel. & Tel. Co.,* 759 P.2d 40, 44 (Colo.1988) ("Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' ... and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (quoting *National Labor Relations Board v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1938))).

In summary, because there was no consideration of demand-side alternatives, I do not believe that the PSCo presented substantial evidence to establish the need necessary to conclude that the improvement at issue was reasonable. I would therefore affirm the order of the district court setting aside the PUC's grant of the PSCo's application to upgrade the Daniels Park transmission line.

I am authorized to say that Justice LOHR joins in this dissent.