PUBLIC SERVICE COMPANY
OF COLORADO, a Colorado
corporation, Petitioner,

v.

Mark VAN WYK and Erica Van Wyk, on
behalf of themselves and all others
similarly situated, Respondents.

No. 99SC783.

Supreme Court of Colorado,
En Banc.

July 2, 2001.

New Century Energies, Lisa A. Lett, Elzi Gurr & Forbes, Kathryn A. Elzi, Denver, CO, Attorneys for Petitioner.

Clanahan, Tanner, Downing & Knowlton, P.C., Anthony L. Leffert, Amanda C. Barry, Denver, CO, Attorneys for Respondents.

J. Wallace Wortham, Jr., City Attorney, Nicholas Pijoan, Assistant City Attorney, Holme Roberts & Owen, LLP, Patricia C. Tisdale, Richard F. Rodriguez, Denver, CO, Attorneys for Amicus Curiae the City and County of Denver.

Justice MARTINEZ delivered the opinion of the court.

This case presents the issue of whether the Colorado Public Utilities Commission's (PUC) approval of electrical line upgrades by the Public Service Company of Colorado (PSCo) precluded claims by adjacent property owners for inverse condemnation, trespass, and nuisance against PSCo based on those upgrades. This case also presents the issue of whether the class-action complaint, filed by Mark and Erica Van Wyk and all others similarly situated (collectively the Van Wyks), stated claims sufficient for relief against PSCo.

In their complaint, the Van Wyks stated claims for inverse condemnation, trespass, and nuisance against PSCo.[1] The Van Wyks allege that the upgrade of the Daniels Park Line, adjacent to their home, led to increased noise, electromagnetic fields, and radiation waves that encroached upon their property, causing mental suffering and distress, as well as the loss of use and enjoyment of that property. The trial court concluded that PUC's decision allowing PSCo to upgrade the electrical lines precluded the Van Wyks from pursuing their claims, and, further, that the Van Wyks' complaint failed to state claims upon which relief could be granted. The court of appeals reversed, holding that the PUC decision did not preclude the Van Wyks from maintaining their claims and that

the complaint sufficiently stated claims for inverse condemnation, trespass, and nuisance. *Van Wyk v. Pub. Serv. Co. of Colo.*, 996 P.2d 193, 195, 198 (Colo.Ct.App.1999).

We agree with the court of appeals that quasi-judicial PUC determinations do not preclude inverse condemnation, trespass, and nuisance claims by plaintiffs as a result of the effects of upgrades previously approved by PUC. However, we do not agree with the court of appeals with respect to the sufficiency of the complaint. Specifically, we conclude that intangible invasions do not support a claim for inverse condemnation and do not constitute trespass. Finally, we also conclude that, while a plaintiff cannot successfully assert a claim for intentional nuisance unless a defendant's conduct is both intentional and unreasonable, here the Van Wyks successfully stated a claim for intentional nuisance here that can be litigated. Accordingly, we affirm the court of appeals' decision in part and reverse in part.

## I. FACTS AND PROCEDURAL POSTURE

In 1989, PUC granted PSCo's application to increase the voltage from 115 to 230 kilovolts (kV) on one of its above-ground electric lines in Douglas County (the Daniels Park Line). Douglas County appealed this grant and the Douglas County District Court reversed PUC's decision, finding the public utilities exception to the Colorado Land Use Act, § 30–28–127, 9 C.R.S. (2000)(permitting PUC to order improvements even if they modify a county's master land use plan), unconstitutional. We reversed the district court's decision, and remanded the case to the district court to rule on Douglas County's other objections to PUC's ruling. *Douglas County Bd. of Comm'rs v. Pub. Utils. Comm'n*, 829 P.2d 1303 (Colo.1992) (hereinafter *Daniels Park I*).[2]

---

1. The Van Wyks also alleged a negligence claim, which was dismissed by the trial court. However, the Van Wyks did not raise the dismissal of that claim on appeal to the court of appeals and have not raised it here. As such, we do not address the dismissal of that claim.

2. Our jurisdiction to review district court decisions regarding PUC determinations comes from section 40–6–115(5), 11 C.R.S. (2000), which provides that the district court may review PUC decisions, and that appeal from such district court review is to be sought directly from this court.

On remand, the district court again reversed PUC's decision, this time finding that PUC did not base its approval of PSCo's line upgrade upon substantial evidence that the upgrade was needed, and thus, reasonable. On appeal, we again reversed the district court's decision, and instructed the district court to reinstate PUC's ruling. *Douglas County Bd. of Comm'rs v. Pub. Utils. Comm'n*, 866 P.2d 919 (Colo.1994) (hereinafter *Daniels Park II*). PSCo completed the upgrade in 1997.

Upon completion of the upgrade, the Van Wyks, owners and residents of property adjacent to the upgraded Daniels Park Line, sued PSCo in the district court on behalf of themselves and all owners of property adjacent to or within three hundred feet of the line.[3] The Van Wyks' complaint asserted claims of inverse condemnation, trespass, nuisance, and negligence, all stemming from the upgrade of the line.

The Van Wyks' complaint alleged that the Daniels Park Line is noisy, particularly during times of high humidity, rain, and snow. The Van Wyks further alleged that electromagnetic fields and noise created by the line have encroached upon their property, resulting in an unlawful taking of their property pursuant to Article II, section 15 of the Colorado Constitution. Furthermore, the Van Wyks argue that the noise, radiation, and electromagnetic particles from the upgraded line have entered their property, and thus, PSCo has committed a trespass. Finally, the Van Wyks allege that PSCo acted intentionally to create a nuisance by transmitting 230kV of electricity through the line, thereby creating noise, an electromagnetic field, and radiation particles. Based on these claims, the Van Wyks sought money damages from PSCo.

In response to the Van Wyks' complaint, PSCo filed a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim, and the district court dismissed the Van Wyks' complaint. The district court held that the Van Wyks' suit indirectly sought a reversal of PUC's ruling, which we had already twice

affirmed. According to the district court's decision, allowing the Van Wyks to indirectly attempt to reverse PUC's decision would "erode if not destroy the constitutional authority of . . . [PUC,] as every decision could subject the public utility to the potential of a civil damage suit regardless of . . . [PUC's] approval."

The court of appeals reversed the district court decision. *Van Wyk*, 996 P.2d at 198. The court of appeals held that PUC's approval of the upgrade of the Daniels Park Line is not dispositive of the Van Wyks' common law tort claims. *Id.* at 196. Specifically, the court of appeals held that PUC's approval did not adjudicate property rights. *Id.* As such, the court·of appeals determined that PUC's decision did not bar the Van Wyks from pursuing their claims against PSCo.

Additionally, the court of appeals concluded that the Van Wyks adequately alleged each of the torts claimed in their complaint. *Id.* at 196–98. Specifically, with respect to inverse condemnation, the court of appeals concluded that the Van Wyks averred material facts sufficient to withstand a C.R.C.P. 12(b)(5) motion to dismiss. The Van Wyks asserted that PSCo knew that the Daniels Park Line would produce unreasonable amounts of noise in violation of Colorado's noise abatement statute, article 12 of Title 25, 8 C.R.S. (2000), and that PSCo knew of the amount of electromagnetic radiation associated with a 230kV line. The Van Wyks further alleged that, despite this knowledge, PSCo failed to commence a condemnation action to compensate the Van Wyks properly and fairly for their damages. Thus, by concluding that the Van Wyks had averred sufficient facts to uphold their complaint, the court of appeals held that claims for intangible impacts upon property are enough to support an inverse condemnation claim. *Van Wyk*, 996 P.2d at 196–98.

The court of appeals next held that the Van Wyks alleged facts sufficient to withstand a C.R.C.P. 12(b)(5) motion to dismiss their claims of trespass. *Id.* at 197. The court of appeals noted that the Van Wyks, in

---

**3.** According to the Van Wyks' briefs, the class consists of approximately 150 property owners in the Daniels Park area.

support of their trespass claim, alleged that PSCo's conduct in upgrading the power line and increasing the voltage resulted in noise, radiation particles, and electromagnetic fields entering upon and above the surface of their property without their permission. The court of appeals concluded that intangible intrusions, such as noise, radiation, and electromagnetic particles, are enough to support a claim for trespass. As such, the court of appeals concluded that the Van Wyks alleged facts sufficient to sustain their trespass claim. *Id.* at 197.

Furthermore, with respect to the nuisance claim, the court of appeals concluded that liability for nuisance may rest upon either intentional or negligent invasion of a person's property interest, or upon conduct that is so dangerous to life and property, and so abnormal or out of place in its surroundings as to fall within the scope of strict liability. *Id.* at 198 (citing *Lowder v. Tina Marie Homes, Inc.*, 43 Colo.App. 225, 601 P.2d 657 (1979)). The court stated that liability predicated on intentional conduct assumes a knowing affirmative act on the part of the defendant, and that actual or constructive knowledge is integral to a finding of liability for negligent maintenance of a nuisance. *Van Wyk*, 996 P.2d at 198. However, the court distinguished the act of which a defendant must have knowledge. The court of appeals held that a defendant need not actually know that its acts will result in the nuisance, but merely that a defendant must have knowledge of the affirmative act itself, regardless of the result. As such, the court of appeals concluded that, because PSCo knew that it was increasing the voltage of the Daniels Park Line, it could be subject to a claim for nuisance, and, thus, that the Van Wyks had averred facts sufficient to withstand a C.R.C.P. 12(b)(5) motion to dismiss.

We granted certiorari to review these court of appeals' determinations which reversed the district court's decisions.[4]

## II. PRECLUSION

We begin our analysis of this case with the question of preclusion. PSCo argues that permitting the Van Wyks to pursue claims for damages for trespass and nuisance in the district court is inconsistent with PUC's authority to regulate utilities. PSCo claims that, under Article XXV of the Colorado Constitution and section 40–4–102, 11 C.R.S. (2000), PUC has the exclusive jurisdiction to balance various public and private interests affected by the actions of public utilities. PSCo suggests that if individuals are permitted recovery in private tort actions against utility companies for acting in a manner consistent with PUC approval, PUC's authority can essentially be overruled by a district court.

Article XXV of the Colorado Constitution vests PUC with:

> [A]ll power to regulate the facilities, service and rates and charges therefor, including facilities and service and rates and charges therefor ... of every corporation, individual, or association of individuals, wheresoever situate or operating ... as a public utility, as presently or as hereafter may be defined as a public utility by the laws of the State of Colorado.

*See also* §§ 40–1–102(1), –103(1)(a), 2–101(1), 11 C.R.S. (2000)(vesting the power to regulate public utilities in PUC). All electrical corporations, such as PSCo, are "public utilities" subject to PUC regulation. § 40–1–103(1)(a). Such regulation includes rulemaking as well as adjudication of applications for extensions, improvements, and new construction. *See* §§ 40–2–108(1), 40–4–101(2), 40–4–102(1), 11 C.R.S. (2000).

4. We granted certiorari on the following four issues: (1) Whether the court of appeals' decision reversing the district court's order of dismissal, and allowing the plaintiffs to pursue claims for trespass and nuisance improperly undermined the authority of PUC, which approved the upgrade of PSCo's electric transmission line; (2) whether a plaintiff can assert a claim for inverse condemnation where the alleged taking concerns intangible impacts, namely noise and electromagnetic fields, and where the alleged damages are a depreciation in property value; (3) whether intangible intrusions can constitute a trespass; and (4) whether a party can assert a claim for intentional nuisance when, as a matter of law, the actor's conduct is neither intentional nor unreasonable.

We have upheld the rule in section 30–28–127, 9 C.R.S. (2000), that PUC regulations and adjudications generally preempt local government in decisions concerning utilities. *City of Craig v. Pub. Utils. Comm'n,* 656 P.2d 1313, 1317 (Colo.1983); *Intermountain Rural Elec. v. Dist. Court,* 160 Colo. 128, 134, 414 P.2d 911, 914 (1966). The need for such preemption stems from the fact that "the regulation of public utilities in the interest of public safety and convenience is a matter of state-wide concern." *City of Craig,* 656 P.2d at 1316. Because a state interest in regulation is predominant, the existence of a demonstrable local interest does not automatically bestow preemptive authority upon a city. *Id.* at 1317; *but cf. US West Communications, Inc. v. City of Longmont,* 948 P.2d 509, 520 (Colo.1997)(PUC jurisdiction limited by a municipality's exercise of its police power to regulate health, safety, and welfare of its citizens).

■ Furthermore, it has been established that judicial action that undermines agency authority is generally disfavored. *See Marcus v. AT&T Corp.,* 138 F.3d 46, 60–61 (2d Cir.1998) ("If courts were licensed to enter this process ... they would unduly subvert the regulatory agencies' authority."); *see also Integrated Network Servs., Inc. v. Pub. Utils. Comm'n,* 875 P.2d 1373, 1377 (Colo. 1994) ("[T]he PUC is an administrative agency with considerable expertise in the area of utility regulation and, as such, its decisions should be accorded due deference."). PUC, acting as an administrative agency, has been endowed with legislative authority in public utility matters. *Integrated Network Servs.,* 875 P.2d at 1377; Colo. Const. art. XXV. Thus, our review of a PUC decision is generally limited to whether PUC has acted within its proper authority, whether its rulings are just and reasonable, and whether its conclusions are supported by the evidence present-ed to it. *Integrated Network Servs.,* 875 P.2d at 1377.

The district court's holding that the Van Wyks' claims were precluded by PUC's approval of the Daniels Park Line upgrade effectively determined that PUC's decision was an adjudication of the Van Wyks' property rights. Such a determination is contrary to our conclusion in *City of Craig* that PUC's valid exercise of its statutory authority leaves the issue of the property interest to the affected parties. 656 P.2d at 1317. While the pertinent PUC ruling concerns the authorization granted to PSCo to upgrade the Daniels Park Line, *see Daniels Park I,* 829 P.2d 1303; *Daniels Park II,* 866 P.2d 919, the questions presented by the Van Wyks in this case demand an adjudication of property rights which were not addressed by PUC's decision. *See, e.g., Mountain View Elec. Ass'n, Inc. v. Pub. Utils. Comm'n,* 686 P.2d 1336, 1341 (Colo.1984) ("The PUC's valid exercise of its statutory authority .... [is] not an adjudication of property rights."); *City of Craig,* 656 P.2d at 1317 ("PUC proceedings to determine the advisability of closing a railroad crossing for safety reasons are not an adjudication of property rights in the crossing but a condition precedent to such an adjudication.")

PSCo further contends that the ruling in *San Diego Gas & Elec. Co. v. Superior Court,* 13 Cal.4th 893, 55 Cal.Rptr.2d 724, 920 P.2d 669 (1996), is persuasive authority on the issue of preclusion of future suits based upon PUC decisions. In that case, the Supreme Court of California refused to act in such a way that would interfere with a policy of the California Public Utilities Commission (the commission) related to electric and magnetic fields emitted from powerlines. *Id.,* 55 Cal.Rptr.2d at 724, 735–36, 920 P.2d at 669, 680–81. The Supreme Court of California relied upon sections 1759 and 2106 of the California Public Utilities Code.[5] Unlike Arti-

---

5. Section 1759(a) of the California Public Utilities Code provides:

No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commis-sion in the performance of its official duties, as provided by law and the rules of court.

Cal. Pub. Util.Code § 1759 (Deering 2000). Section 2106 of the California Public Utilities Code provides in pertinent part:

Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required

cle XXV of the Colorado Constitution, the California statutes explicitly withhold jurisdiction from every court, except the state supreme court, to review any order or decision of the commission, or to interfere with the commission in the performance of its duties. Cal. Pub. Util.Code § 1759 (Deering 2000). To the extent that section 2106 allows an action to be brought in the superior court for damages caused by any unlawful act of a public utility, the Supreme Court of California has limited that section to "those situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies." *San Diego Gas*, 55 Cal.Rptr.2d at 728, 920 P.2d at 673 (citing *Waters v. Pac. Tel. Co.*, 12 Cal.3d 1, 114 Cal.Rptr. 753, 523 P.2d 1161 (1974)). Such a prohibition upon the power and jurisdiction of the courts related to PUC does not exist in Colorado. Accordingly, we do not find the California courts' resolution of this issue, characterized by the holding in *San Diego Gas*, to be persuasive authority in the case before us.

■ In Colorado, we have previously determined that PUC's authority over public utilities stems from its constitutional and statutory police power, and that exercise of that police power is independent of any adjudication of property rights. *Mountain View*, 686 P.2d at 1341. In fact, PUC does not have, and was never given, any authority to adjudicate property rights. *Id.*

■ Here, the Van Wyks seek an adjudication based on their claims of inverse condemnation, trespass, and nuisance. While inverse condemnation is a question of property rights, both nuisance and trespass are tort claims related to property rights and damages to property and property owners. Since we have held that PUC does not have the authority to adjudicate property rights, it logically follows that PUC also does not have authority to adjudicate questions related to damages stemming from property ownership and torts committed against either the property or the owner. Thus, because the Van Wyks seek a determination of property rights, via their inverse condemnation claim, and of damages related to their property and property holdings, through their trespass and nuisance tort claims, they are not seeking to re-litigate PUC's decision in another forum.[6] Therefore, we conclude that the Van Wyks are not precluded from seeking an adjudication of their property rights and torts related to those rights with regard to the upgrade of the Daniels Park Line.

## III. SUFFICIENCY OF COMPLAINT

■ Having determined that the Van Wyks are not precluded from bringing forth their claims against PSCo, we now turn to the C.R.C.P. 12(b)(5) motion to dismiss granted by the district court. A C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted serves as a test of the formal sufficiency of a plaintiff's complaint. *Dorman v. Petrol Aspen*, 914 P.2d 909, 911 (Colo.1996). The chief function of a complaint is to give a defendant notice of the transaction or occurrence that is the subject of a plaintiff's lawsuit. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1100 (Colo.1995). A C.R.C.P. 12(b)(5) motion to dismiss is looked upon with disfavor, and a complaint should not be dismissed unless it appears beyond a doubt that a plaintiff can

---

to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person. Cal. Pub. Util.Code § 2106 (Deering 2000).

6. PSCo argues that *res judicata* and collateral estoppel apply to administrative proceedings where an agency has acted in a quasi-judicial manner. *Salida Sch. Dist. R–32–J v. Morrison*, 732 P.2d 1160, 1163 (Colo.1987). While we agree with this argument, we fail to see, in light of our conclusion that PUC decisions are not an adjudication of property rights, how, except for within the context of unreasonableness in the nuisance claim, it applies to the case at hand. Furthermore, insofar as collateral estoppel may apply to the issue of unreasonableness in the claim that the upgrade of the Daniels Park Line is a nuisance, we do not address this argument because we find the claim insufficient as discussed for other reasons.

prove *no* set of facts in support of her claim which would entitle her to relief. *Id.; Dunlap v. Colo. Springs Cablevision, Inc.*, 829 P.2d 1286, 1291 (Colo.1992). A complaint should not be dismissed for failure to state a claim so long as the plaintiff is entitled to some relief upon any theory of the law. *Rosenthal*, 908 P.2d at 1099; *Dunlap*, 829 P.2d at 1290.

 When reviewing a motion to dismiss under C.R.C.P. 12(b)(5), all averments of material fact must be accepted as true, and all of the allegations in the complaint must be viewed in the light most favorable to the plaintiff. *Dorman*, 914 P.2d at 911. Furthermore, when reviewing a motion to dismiss a complaint, the court may only consider matters stated within the complaint itself, and may not consider information outside of the confines of that pleading. *Rosenthal*, 908 P.2d at 1099. If a court looks to information outside of the complaint, a motion to dismiss must be treated as a motion for summary judgment, and disposed of as provided in C.R.C.P. 56. C.R.C.P. 12(b)(5); *Dunlap*, 829 P.2d at 1290. However, if matters outside of the complaint are submitted to the trial court, but not considered in review of the 12(b)(5) motion to dismiss, the trial court need not convert the motion to dismiss into a motion for summary judgment. *Dunlap*, 829 P.2d at 1290. Upon review of a trial court's ruling on a motion to dismiss for failure to state a claim, an appellate court is in the same position as the trial judge. *McDonald v. Lakewood Country Club*, 170 Colo. 355, 360–61, 461 P.2d 437, 440 (1969).

With these principles in mind, we now set forth the relevant standards for claims of inverse condemnation, trespass, and nuisance. For each claim, we must determine whether the Van Wyks have presented facts which, if true, are sufficient to support each claim asserted in the complaint. *Dorman*, 914 P.2d at 911. We conclude that the material facts and allegations of the complaint fail to support the inverse condemnation and trespass claims made by the Van Wyks, and as such, the district court properly dismissed those claims pursuant to PSCo's C.R.C.P. 12(b)(5) motion to dismiss. We further conclude that the material facts and allegations of the complaint support the nuisance claim made by the Van Wyks, and therefore, the district court improperly dismissed that claim.

## A. INVERSE CONDEMNATION

 We first look to the Van Wyks' claim for inverse condemnation. Inverse condemnation is the "taking," without compensation, of private property for public or private use by a governmental or public entity which has refused to exercise its eminent domain power. *Trinity Broad. v. City of Westminster*, 848 P.2d 916, 921 (Colo.1993). Any action for inverse condemnation is based upon Article II, Section 15 of the Colorado Constitution, which provides, in relevant part, "Private Property shall not be taken or damaged, for public or private use, without just compensation." *City of Northglenn v. Grynberg*, 846 P.2d 175, 178 (Colo.1993). Because an inverse condemnation claim is based upon this "taken or damaged" clause of our constitution, it is to be tried as if it were an eminent domain proceeding. *Id.* In eminent domain proceedings, the only question decided by a jury is the amount of compensation to be awarded.[7] § 38–1–101, 10 C.R.S. (2000). Questions of whether a "taking or damaging" has occurred are issues of law to be decided by the court. *Grynberg*, 846 P.2d at 178. Therefore, in this case, we review the question of whether PSCo has committed a taking or a damaging de novo. *People v. Romero*, 953 P.2d 550, 555 (Colo.1998) ("[T]rial court's legal conclusion is subject to our de novo review.").

 Like the Fifth Amendment to the United States Constitution, Article II, Section 15 of our constitution prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V; Colo. Const. art. II, § 15. The United States Supreme Court has held that governmental activities that do not physically encroach on

---

7. PSCo may exercise eminent domain rights pursuant to its authority as granted by sections 38– 5–104 to –107, 10 C.R.S. (2000).

private property are not takings under the Fifth Amendment, at least with respect to non-regulatory takings. *Trans. Co. v. Chicago*, 99 U.S. 635, 642, 25 L.Ed. 336 (1878); *Batten v. United States*, 306 F.2d 580, 583 (10th Cir.1962); *but see Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)(holding in a regulatory taking context that a taking occurs when a property owner is called upon to sacrifice all economically beneficial uses of the real property); *Grynberg*, 846 P.2d at 179. Although the Supreme Court has been willing to find a taking "when inroads are made upon an owner's use of [property] to an extent that, as between private parties, a servitude has been acquired," *United States v. Dickinson*, 331 U.S. 745, 748, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), generally, "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government." *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). In *Grynberg*, we held that a taking is effected by a legal interference with the physical use, possession, enjoyment, or disposition of property, or by acts which translate to a governmental entity's exercise of dominion and control. 846 P.2d at 182. For PSCo to effectuate a physical taking here, it must physically occupy the Van Wyks' property. *Yee v. City of Escondido*, 503 U.S. 519, 527, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) ("The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." (emphasis in original)).

Here, the only allegation made by the Van Wyks in their complaint that even remotely addresses the requirements detailed in *Grynberg*, are that electromagnetic fields and radioactive "particles" encroach upon their property, and that these, coupled with the noise emitted from the line, interfere with the use and enjoyment of their land. However, while the alleged noise, electromagnetic fields, and radiation may be a disturbance to the complaining parties, we do not believe that PSCo has effected a taking of the Van Wyks' property. We agree with PSCo's assertion that the Van Wyks have alleged nothing greater than intangible invasions upon their property.

The meaning of the term "intangible" is something that is impalpable, or incapable of being felt by touch. *Webster's Ninth New Collegiate Dictionary* 603, 628 (1988). Many courts have held that noise is an intangible invasion. *Wilson v. Interlake Steel Co.*, 32 Cal.3d 229, 185 Cal.Rptr. 280, 283, 649 P.2d 922, 925 (1982) ("[a]ll intangible intrusions, such as noise"); *Bormann v. Bd. of Supervisors*, 584 N.W.2d 309, 315 (Iowa 1998) ("intangible substances, such as noises"); *State Rd. Comm'n v. Rohan*, 26 Utah 2d 202, 487 P.2d 857, 858 (1971)("any such intangible factor as noise"); *see also* 75 Am.Jur.2d. Trespass § 35 (1991)("intangible intrusions, such as noise"). We conclude that noise, despite being perceptible through hearing, is impalpable, and thus, intangible.

Similarly, we also conclude that electromagnetic fields and radiation waves emitted by powerlines are intangible. Neither electromagnetic fields nor radiation waves produced by electric lines can be perceived by *any* of the senses. *San Diego Gas*, 55 Cal. Rptr.2d at 750, 920 P.2d at 695. Instead, they are both similar to television and radio waves, which surround us at all times, but which are completely imperceptible. *Id.* Electromagnetic fields are produced by every living thing, as well as by any appliance that utilizes electricity. *Id.*, 55 Cal.Rptr.2d at 727, 920 P.2d at 673. Even the human body itself is a producer of electric fields because all cells in the body maintain, across their outer membranes, large natural electric fields at least 100 times more intense than those that can be induced by exposure to common power-frequency fields. *Id.* Radiation is also common in the everyday world, with gamma rays, X-rays, and high-frequency ultraviolet light (such as sunlight) pervading our homes, cars, workplaces, and natural spaces. *Id.*, 55 Cal.Rptr.2d at 731, 920 P.2d at 676. While such waves and fields *might* have some sort of physical effect upon the body,[8] electromagnetic fields

---

8. In *San Diego Gas,* the Supreme Court of California explained that, "When a human body is in

and radiation waves of the type at issue here are ubiquitous and our senses are incapable of perceiving them. As such, we agree with the Supreme Court of California that electromagnetic fields and radiation waves emitted by powerlines are intangible intrusions upon land. *Id.*, 55 Cal.Rptr.2d at 750, 920 P.2d at 695 ("[E]lectric and magnetic fields arising from powerlines are wholly intangible phenomena.").

Because we have concluded that noise, electric fields, and radiation are intangible, not physical, invasions, and because PSCo has not substantially deprived the Van Wyks of the use and enjoyment of their property, we hold that a taking has not occurred. *See, e.g., Krupp v. Breckenridge Sanitation Dist.*, 19 P.3d 687, 695 (Colo.2001) ("A taking unquestionably occurs when an entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property.") (citing *Grynberg*, 846 P.2d at 178).

■ Having concluded that the Van Wyks cannot sustain their inverse condemnation claim on a physical takings theory, we now look to see whether the facts, as alleged in the Van Wyks complaint, support inverse condemnation upon any other theory of the law. *See Rosenthal*, 908 P.2d at 1100 ("[C]omplaint should not be dismissed ... so long as the pleader is entitled to some relief upon any theory of the law." (internal quotation marks omitted)). As stated above, both the Fifth Amendment to the United States Constitution and Article II, Section 15 of the Colorado Constitution prohibit the taking of private property for public use without just compensation. U.S. Const. amend. V; Colo. Const. art. II, § 15. Here, the Van Wyks have not alleged that PSCo's actions effect a regulatory taking, and have not even attempted to aver facts or allegations in support of such a claim. Our constitution not only prohibits de facto takings, but also the damaging of private property for public use,

without just compensation. Colo. Const. art. II, § 15. We have held that including damaging in the just compensation provision of the Colorado Constitution affords a property owner greater protections than those afforded by the U.S. Constitution. *Grynberg*, 846 P.2d at 179 (citing *Mosher v. City of Boulder*, 225 F.Supp. 32, 35 (D.Colo.1964)). The word "damaged" is in the Colorado Constitution in order to grant relief to those property owners who have been substantially damaged by public improvements made upon land abutting their lands, but where no physical taking by the government has occurred. *City of Pueblo v. Strait*, 20 Colo. 13, 18, 36 P. 789, 791 (1894). Thus, we now analyze the Van Wyks' inverse condemnation claim under a theory of damaging.

■ The damage alleged by an aggrieved party must be to either the property itself, or its appurtenances, or must affect some right or interest that the owner enjoys related to that property, which is not shared with, or enjoyed by, the public generally. *Grynberg*, 846 P.2d at 179. While we have held that depreciation in market value may be considered for the purposes of assessing damages to a property owner in a condemnation proceeding where a portion of a parcel of land is taken, *La Plata Elec. Ass'n, Inc. v. Cummins*, 728 P.2d 696, 703 (Colo.1986), we have never held that mere depreciation in value is grounds to award just compensation for a damaging of property. *Id.*

■ In *La Plata*, we expressed our view that, generally, the only recourse for a property owner whose land is diminished in value by the acquisition and use of adjoining land by a private party lies in the law of nuisance. *Id.* at 701. We concluded that a condemning authority should be subject to the same burdens and benefits as a private party. Accordingly, a property owner whose property value is diminished by activity on an adjoining parcel of land by a condemning authority

an electric or a magnetic field ... the field induces a current in the body .... [that] is far weaker than the body's natural currents." 55 Cal.Rptr.2d 724, 920 P.2d at 675. The court further explained that, with respect to radiation, "When [the] matter is human tissue, ionization can damage the DNA molecules of the cells,

causing mutations and various forms of cancer. *However*, the energy carried in 60 Hz fields is much too small to break molecular or chemical bonds." *Id.* at 676 (internal quotation marks omitted)(emphasis added). The type of radiation and energy fields that the Van Wyks complain of are from 60 hertz (Hz) fields.

may recoup such losses only by operation of the law of nuisance. *Id.* We continue to uphold that conclusion here.

 The Van Wyks further allege in their complaint that they have suffered damages due to the noise, electromagnetic fields, and radiation emitted from the upgraded Daniels Park Line. In order to show damages that deserve just compensation, a landowner must prove damages different in kind, not merely degree, from those suffered by the general public. *La Plata,* 728 P.2d at 698; *Troiano v. Colo. Dep't of Highways,* 170 Colo. 484, 494, 463 P.2d 448, 452 (1969); *see also Penn Cent.,* 438 U.S. at 148, 98 S.Ct. 2646 (Rehnquist, J., dissenting)("[W]hen [one individual] surrenders to the public something more and different from that which is exacted from other members of the public, a full and just equivalent shall be returned to him." (citations omitted)). In *La Plata,* we held that loss of view, or loss of "affinity or eye appeal" resulting from the construction of a structure, such as a power line, was not compensable because it was a loss shared by all members of the public generally, though to varying degrees. 728 P.2d at 698–99.

 Similar to *La Plata,* in this case, we hold that the damages alleged by the Van Wyks, namely the noise, electromagnetic fields, and radiation, do not qualify as damaging for which just compensation must be given since these inconveniences are also shared by the public generally. While the Van Wyks allege that they have suffered harm due to these effects of the upgraded line, we find nothing in their complaint suggesting that these detriments are not suffered by the public generally.

According to the Van Wyks' complaint, the claims alleged are typical of all property owners who own property adjacent to the electrical line, or within three hundred feet of the electrical line. The complaint does not suggest that owners of property farther than three hundred feet from the line do not suffer similar harm from the Daniels Park upgrade. Moreover, there is nothing in the complaint to suggest that these alleged harms suffered by the Van Wyks are anything more than harms of a greater degree than those suffered by the general public.

Furthermore, the Van Wyks' complaint alleges a diminution in property value as a result of PSCo's actions on an adjoining parcel of land. We have expressed our view that the Van Wyks' only recourse for that diminution could possibly lie in the law of nuisance. As such, we cannot hold that just compensation is due to the Van Wyks for the emissions of the Daniels Park Line under the "damages provision" of Article II, Section 15 of the Colorado Constitution.

Because we conclude that PSCo's actions do not constitute either a taking or a damaging of the Van Wyks' property, we hold that the complaint, even when viewed in the light most favorable to the Van Wyks, cannot sustain a claim for inverse condemnation. Therefore, the district court properly dismissed this claim pursuant to PSCo's C.R.C.P. 12(b)(5) motion.

## B. TRESPASS

 We now turn to the Van Wyks' claim for trespass. The elements for the tort of trespass are a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that real estate. *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 933 (Colo.1997); *Burt v. Beautiful Savior Lutheran Church,* 809 P.2d 1064, 1067 (Colo. App.1990). By intentionally entering the land possessed by someone else, or causing a thing or third person to enter the land, an individual becomes subject to liability for trespass, whether or not he caused harm to any legally protected interest of the landowner. Restatement (Second) of Torts § 158 (1965). "The actor, without himself entering the land, may invade another's interest in its exclusive possession by throwing, propelling, or placing a thing either on or beneath the surface of the land or in the air space above it." *Id.* at cmt. i. While we recognize that a physical entry onto the land possessed by another is a trespass, *Gerrity,* 946 P.2d at 933, the issue we are presented with here is whether the intangible entry upon real estate possessed by another may constitute a tres-

pass.[9]

In Colorado, we have never addressed the question of whether an intangible intrusion may form the basis for a trespass claim. In some jurisdictions, trespass requires intrusion by an agent that is "appreciable." *Adams v. Cleveland Cliffs Iron Co.*, 237 Mich.App. 51, 602 N.W.2d 215, 225 (1999). Other jurisdictions allow recovery under a theory of trespass where, despite no visible intrusion, some particulate is deposited upon the property. *See, e.g. Borland v. Sanders Lead Co.*, 369 So.2d 523, 529–30 (Ala.1979) (permitting recovery for trespass upon intrusion of lead and sulfoxide particulates); *Maryland Heights Leasing, Inc. v. Mallinckrodt, Inc.*, 706 S.W.2d 218, 225–26 (Mo.Ct. App.1985) (radioactive emissions may support trespass claim if radioactive material has been deposited on the property); *Martin v. Reynolds Metals Co.*, 221 Or. 86, 342 P.2d 790, 794 (1959) (intrusion of flouride particulates sufficient for recovery under trespass claim). Still other jurisdictions allow recovery for trespass of intangible intrusions where the intrusion physically damages the land. *See, e.g. Satterfield v. J.M. Huber Corp.*, 888 F.Supp. 1567, 1572 (N.D.Ga.1995) (applying Georgia law, granting summary judgment for failure to prove damages as part of intangible trespass claim); *Maddy v. Vulcan Materials Co.*, 737 F.Supp. 1528, 1540 (D.Kan.1990) (applying Kansas law, without proof of physical damages to property trespass claim fails); *San Diego Gas*, 55 Cal.Rptr.2d 724, 920 P.2d at 695 ("[W]e found no physical damage to the property— and hence no cause of action for trespass.").

■ The Van Wyks argue that noise, radiation, and electromagnetic fields are all physical intrusions upon their property. As we concluded above, while all three may be intrusions upon property, none of these is a physical intrusion. As such, we must determine whether a cause of action for trespass is sustainable under a complaint alleging intangible intrusions upon property. As noted above, interference with possession of another's property is central to the trespass cause of action. If there is no invasion of tangible matter, then there would be no use or interference with possession. W. Page Keeton et al., *Prosser & Keeton on Torts* 71 (5th ed.1984)(hereinafter *Prosser*). An intangible intrusion onto property cannot result in a trespass unless the intrusion causes physical damage to the property. The court of appeals has held that a landowner who sets a force in motion which will, in the ordinary course of events, cause damage to the property of another, is guilty of trespass. *Cobai v. Young*, 679 P.2d 121, 123 (Colo.App.1984); *Miller v. Carnation Co.*, 33 Colo.App. 62, 516 P.2d 661 (1973). Whether that force is a physical intrusion, or merely results in the damage of another's property, has not been established. We are swayed by the reasoning in cases such as *San Diego Gas* that require a showing of actual damage to property for a trespass claim upon an intangible intrusion to stand. As such, we now hold that, in Colorado, an intangible intrusion may give rise to claim for trespass, but only if an aggrieved party is able to prove physical damage to the property caused by such intangible intrusion.

Our holding here is consistent with the historical requirement of an entry or use that interferes with possession for trespass liability to be established. *Prosser, supra*, at 71. The requirement that the intangible intrusion be intentional, and that a plaintiff prove physical damage caused by the intrusion, safeguards against the concern that allowing trespass claims against intangible intrusions would produce too much liability. *See* Dan B. Dobbs, *The Law of Torts* § 53 (2000). Moreover, a property owner forced to prove damage will be further limited to seeking redress in cases of serious or substantial invasions. The difficulty in proving a connection between a minor damage and an intangible intrusion is too great to support mass litigiousness on the part of pestered property owners.[10]

---

**9.** Before we begin analysis of the trespass cause of action, we must note that electromagnetic fields, radiation waves, and noise emitted from powerlines are all intangible phenomena within the context of a trespass claim, just as we con- cluded they were in an inverse condemnation claim.

**10.** It should be noted that our holding here merely defines the boundaries of a claim for

■ Under our newly outlined requirements for a cause of action in the tort of trespass, we conclude that the district court properly dismissed the Van Wyks' tort claim under C.R.C.P. 12(b)(5). In the complaint, the Van Wyks did not allege specific physical damage to their property resulting from the intangible intrusions of which they complained. Therefore, because they have not alleged physical damage, the Van Wyks cannot prove trespass by those alleged intangible intrusions. *Cf. Boughton v. Cotter Corp.,* 65 F.3d 823, 834–35 (10th Cir.1995) (trial court properly excluded fear of cancer or other disease in trespass claims because, under Colorado law, allowing such claims would increase potential for fraudulent or speculative claims). Furthermore, the Van Wyks did not allege any other tangible intrusions upon their property. Accordingly, the complaint, when viewed in the light most favorable to the Van Wyks, cannot support a cause of action for trespass and was properly dismissed.

### C. NUISANCE

The final issue before us is the Van Wyks' nuisance claim. The nuisance alleged by the Van Wyks is the continuous and constant transmission of 230kv of electric power through the Daniels Park Line.[11] In the complaint, the Van Wyks allege that the Daniels Park Line emits continual, unreasonably loud noises that increase during times of high humidity, rain, or snow. They further allege that the electrical line emits high amounts of radiation and an electromagnetic field, both of which encroach upon their land. As a result of these intrusions, the Van Wyks allege that the value of their property has depreciated, they have suffered mental distress, and they have lost the quiet use and enjoyment of their land.

■ A claim for nuisance is predicated upon a substantial invasion of a plaintiff's interest in the use and enjoyment of his property when such invasion is: (1) intentional and unreasonable; (2) unintentional and otherwise actionable under the rules for negligent or reckless conduct; or (3) so abnormal or out of place in its surroundings as to fall within the principle of strict liability. Restatement (Second) Torts § 822; *Baughman v. Cosler,* 169 Colo. 534, 543–44, 459 P.2d 294, 299 (1969). Stated differently, the elements of a claim of nuisance are an intentional, negligent, or unreasonably dangerous activity resulting in the unreasonable and substantial interference with a plaintiff's use and enjoyment of her property. *Lowder,* 43 Colo.App. at 227, 601 P.2d at 658. To maintain a successful nuisance claim, a plaintiff must establish that the defendant has unreasonably interfered with the use and enjoyment of her property. *Id.* The question of unreasonableness is an issue of fact and should, therefore, be left to the determination of the trier of fact. Restatement (Second) of Torts, § 826 cmt. b. In making any determination of unreasonableness, the trier of fact must weigh the gravity of the harm and the utility of the conduct causing that harm. *Id.* at cmt. d. Generally, to be unreasonable, an interference must be significant enough that a normal person in the community would find it offensive, annoying, or inconvenient. *Id.* at § 821F; *Lowder,* 43 Colo.App. at 227, 601 P.2d at 658.

■ We agree with PSCo's assertion that the Van Wyks' complaint alleges an inten-

---

trespass and does not affect the tort of nuisance, nor a property owner's right to pursue a cause of action for nuisance.

11. We do not believe that it is accurate to read the Van Wyks' complaint to allege that the upgrade of the Daniels Park Line was a nuisance. Although the nuisance section of the complaint includes a broad cross-reference to other factual allegations in the complaint, such as the upgrade of the Daniels Park Line, the nuisance section specifically alleges that the harm was caused by the continuous transmission of electricity through the line. Further, this reading of the complaint is consistent with the interpretation of the language of the complaint argued by the Van Wyks. The nuisance claim in the complaint reads, in pertinent part, as follows:

29. Plaintiffs incorporate by this reference the preceding as if fully alleged herein.

30. The actions of the Defendant in transmitting 230kv of electrical power through the power line and the resulting noise, radiation, and electromagnetic field constitute an intentional invasion of the property owners' rights and unreasonably interferes with their right to use and enjoy their property.

tional, and not negligent or strict liability, nuisance. As such, we examine whether the Van Wyks have adequately alleged that PSCo has intentionally and unreasonably interfered, in a significant way, with the use and enjoyment of their property. PSCo argues that, because the Van Wyks did not specifically argue that PSCo acted intentionally and unreasonably to create a nuisance, the Van Wyks have failed to establish a claim for intentional nuisance. PSCo relies on the Restatement (Second) of Torts section 825, which provides that conduct resulting in an invasion of the plaintiff's interest in the use and enjoyment of her property is intentional if a defendant acts for the purpose of causing such invasion, or knows that such invasion is the result of, or is substantially certain to result from, his conduct. Restatement (Second) of Torts § 825. PSCo further relies on the comments to section 825, noting that under the rule in the Restatement, an invasion is not "intentional" even though a defendant realizes or should realize that his conduct involves a serious risk or likelihood of causing the invasion. Restatement (Second) of Torts § 825 cmt. c. Thus, PSCo argues, because the Van Wyks have not alleged that PSCo intentionally acted in such a way that would interfere with their interest in the use and enjoyment of their property, the Van Wyks' complaint should be dismissed. PSCo's argument in part depends upon the assumption that, because PUC determined that the upgrade of the line was reasonable, PSCo could not have intended a nuisance, or known a nuisance was likely to result, so long as the line upgrade was performed in compliance with the conditions PUC placed on its approval of the upgrade.

PSCo's arguments fail, however, to recognize that the claim made by the Van Wyks in their complaint is not that the upgrade is the cause of the nuisance, nor that PSCo began transmitting electricity through the Daniels Park Line with the intention of creating a nuisance. Instead, the Van Wyks argue that PSCo committed the tort of intentional nuisance by continuing to transmit electricity through the line after gaining knowledge that the transmission of that power resulted in a possible nuisance. While it is not entirely clear from the Van Wyks' complaint whether PSCo was ever actually made aware of the alleged invasion interfering with the use and enjoyment of the Van Wyks' property, we must view the complaint in the light most favorable to the plaintiff. *Dorman*, 914 P.2d at 911. The allegation in the complaint that "Public Service Company has refused to discuss compensation or make any offers of payment to the property owners" suggests that the property owners made PSCo aware of the alleged invasion interfering with the use and enjoyment of the property, and that despite that notice, PSCo continued to transmit electricity through the line at 230 kV.

Accordingly, the Van Wyks' complaint alleges that PSCo has intentionally and unreasonably continued to transmit electricity through the Daniels Park Line with awareness of the invasion interfering in the Van Wyks' use and enjoyment of their property. Whether that allegation sufficiently alleges the tort of intentional nuisance is also dependent upon the Van Wyks' allegations concerning the unreasonableness of the invasion of their substantial interest in the use and enjoyment of their land resulting from that act. Because PUC considered the noise and electromagnetic fields that would probably be emitted by the line and determined that the upgrade of the line was reasonable, we next compare the unreasonableness alleged by the Van Wyks to that PUC determination.

■ As we noted above, the interference complained of by the Van Wyks must be a substantial invasion interfering with the use and enjoyment of the land, and reducing the value of the land. *Prosser, supra,* at 622–23. A determination that the social utility of the act causing the invasion that interferes with the use and enjoyment of the land does not outweigh the harm of that invasion is necessary for a finding of unreasonableness. Restatement (Second) of Torts § 826. Although the determination of unreasonableness is ultimately an issue of fact, Restatement (Second) of Torts § 826 cmt. (b), we are concerned here with whether the allegation is sufficient to state a claim. Thus we analyze this complaint in light of a C.R.C.P. 12(b)(5) motion to dismiss, and we assume the averred facts to be true. *Dorman*, 914 P.2d at 911.

The complaint alleges, among other things, that the noise, radiation, and electromagnetic fields have caused annoyance, interference with use and enjoyment of the land, mental suffering, and a depreciation in property value. These allegations of unreasonableness are central to the Van Wyks' nuisance claim. To prove that PSCo had the intent to commit a nuisance, the Van Wyks' allegations must extend beyond the scope of the PUC determination of reasonableness. The allegation of unreasonableness is the threshold to a nuisance claim, because without unreasonableness, there can be no intent to commit an invasion that unreasonably interferes with a plaintiff's use and enjoyment of his land. In this case, PSCo could not have had the intent to commit a nuisance, as explained in our discussion of the intentional requirement, if the invasion interfering with the Van Wyks' use and enjoyment of their property fell within the PUC determination of reasonableness. Thus, the Van Wyks would fail to establish the intentional element of nuisance unless they allege that the invasion interfering with the use and enjoyment of their land is unreasonable outside of PUC's determination.

Thus, because an allegation of unreasonableness is central to a nuisance claim, the PUC determination of reasonableness sets the standard for the balance between the social utility of the transmission of electricity and possible harm to property against which the Van Wyks must argue. If, for example, PUC had quantified the noise level it deemed to be reasonable, then that noise level would become the standard for the level at which noise would not constitute an invasion interfering with the Van Wyks' use and enjoyment of their property. Therefore, we compare the PUC decision with regards to each of these allegations to determine whether the Van Wyks have alleged unreasonable invasions of their interest in the use and enjoyment of their land beyond the scope of PUC's findings.

In its determination that the increase in noise levels likely to be occasioned by the transmission line upgrade was reasonable, PUC declined to use the public nuisance noise standards, § 25–12–101, 8 C.R.S. (2000), as a standard of reasonableness. Instead, PUC merely depended upon PSCo's promise to use a larger transformer, and the fact that, as a general rule, larger transformers are quieter than smaller ones. PUC also depended upon testimony that the audible noise from the proposed upgraded line would be reasonable because noise complaints generally arise only at noise levels exceeding those found on lines similar to the proposed upgrade here. No fact finding was made as to actual noise levels, or as to whether the line here, once transmitting electricity, would actually produce noise levels at or below the levels of similar lines. Thus, PUC did not quantify the noise level it deemed to be reasonable, but simply determined that the noise that it anticipated was not unreasonable. Accordingly, the scope of PUC's decision with regard to noise here is "reasonable," without any set specific criteria.

Similarly, when entertaining testimony concerning electromagnetic fields, PUC noted that research into the relationship between electromagnetic fields and human health would continue for a number of years. PUC acknowledged "that future scientific and medical research may negate the truthfulness of this finding and that the exercise of 'prudent avoidance' is appropriate." Despite this acknowledgement, PUC gave conditional approval for the upgrade of the Daniels Park Line, stating, however, that "[I]f further research tends to weaken or negate those conclusions, then regulatory bodies, such as this Commission, must respond accordingly." Thus, as it did with its determination of noise, PUC failed to quantify the strength of electromagnetic fields it deemed to be reasonable. Instead, PUC simply determined that the electromagnetic fields anticipated were likely to be reasonable, unless future research showed otherwise. In sum, the PUC adopted a general standard of reasonableness here, with regard to electromagnetic fields, without setting specific criteria.

While the complaint in this case does not quantify how the electromagnetic fields and noise interfere with their use and enjoyment of the property, we infer that the Van Wyks are alleging that the fields and noise exceed what PUC considered to be reason-

able. Because PUC's determination as to reasonableness here lacked any specificity with respect to electromagnetic fields and noise, the Van Wyks' claim goes beyond that PUC determination by alleging that the invasion that interferes with the use and enjoyment of their land is unreasonable, without making more specific allegations. As such, the Van Wyks' allegations that the unreasonableness of conducting electricity through the Daniels Park Line at 230kV is beyond the scope of the previous PUC determination. Therefore, because the PUC's standard of reasonableness is the threshold requirement necessary to establish the element of intent, and thus nuisance, and because we have determined that the Van Wyks' adequately alleged unreasonableness in their complaint, we next consider the intent requirement of the nuisance claim.

To predicate liability on intentional conduct assumes a knowingly affirmative act on the part of a defendant. *Baughman,* 169 Colo. at 544, 459 P.2d at 299. In its decision below, the court of appeals held that "to establish liability under a nuisance theory plaintiff must only demonstrate that defendant possessed knowledge of the affirmative act which, here, is increasing the voltage in the line." *Van Wyk,* 996 P.2d at 198. While we agree that a claim of nuisance may be predicated upon such knowledge, we do not believe that a claim for *intentional* nuisance could be supported under this definition. Rather, the court of appeals' analysis of the knowledge requirement results in the proper characterization of a *negligent* nuisance claim. *See Lowder,* 43 Colo.App. at 227, 601 P.2d at 658 (because defendant intended to scrape and level property, but merely should have reasonably foreseen that invasion would result from that conduct, liability rested on a theory of negligent, not intentional, nuisance). Therefore, we conclude that the court of appeals mischaracterized the requirements for a showing of intentional nuisance, and incorrectly analyzed the Van Wyks' intentional nuisance claim under a negligent nuisance standard.

■ As stated above, the Restatement (Second) of Torts section 825 defines "intentional invasion" as one where the actor acted for the purpose of causing the invasion interfering with the use and enjoyment of the plaintiff's land, or knew that the invasion interfering with the use and enjoyment of the land is the result of, or is substantially certain to result from, his conduct. Several states have adopted the Restatement's definition of an intentional invasion, holding that a plaintiff must show that a defendant intended the resulting invasion interfering with the use and enjoyment of the land or knew that the invasion interfering with the use and enjoyment of the land would result from the conduct. *See Hickox v. Vester Morgan, Inc.,* 439 So.2d 95, 97–102 (Ala.1983) (upholding jury verdict that intentional negligence proved by showing defendant intentionally interfered with plaintiff's use and enjoyment of property); *Beckwith v. Stratford,* 129 Conn. 506, 29 A.2d 775, 777 (1942) ("using [intentional] as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance"); *United Proteins, Inc. v. Farmland Indus., Inc.,* 259 Kan. 725, 915 P.2d 80, 85 (1996)("To create an 'intentional' nuisance, it is not enough to intend to create a condition causing harm; the defendant must either specifically intend to damage the plaintiff or act in such a way as to make it 'substantially certain' that damage will follow." (citations omitted)); *Rosario v. City of Lansing,* 403 Mich. 124, 268 N.W.2d 230, 238 n. 2 (1978) (Moody, Jr., J., concurring) (adopting rule of intent to bring about nuisance or substantially knowing nuisance will result). This rule, that a defendant must intend to create the unreasonable invasion interfering with the use and enjoyment of the plaintiff's property, or know that the invasion interfering with the use and enjoyment of the plaintiff's property will result from his conduct, appears to us to be a sound principle of tort liability. Therefore, we adopt the rule of intentional nuisance as defined in section 825 of the Restatement (Second) of Torts.

■ Contrary to PSCo's argument, the mere fact that we adopt the rule here that a defendant must act with intent to create the nuisance, or knowing that the nuisance will result, or is substantially likely to result from

his conduct, does not automatically render the Van Wyks' complaint insufficient. On the contrary, we note that the defendant's intent to act in such a way that an invasion interfering with the use and enjoyment of the plaintiff's property occurs is not limited to the initial act or motivation behind that act. Indeed, if a defendant, with notice that an invasion interfering with the use and enjoyment of the plaintiff's property has occurred, or is substantially certain to occur, continues his conduct without regard to the invasion interfering with the use and enjoyment of the plaintiff's property, that defendant's conduct will be the proper basis for an intentional nuisance cause of action. *Prosser, supra,* at 624–25.

■ Thus, if PSCo knew of the allegedly unreasonable invasions interfering with the use and enjoyment of the Van Wyks' property, and if, as we are required to assume, all of the averments of fact made by the Van Wyks are true, then the Van Wyks' complaint properly states a claim for intentional nuisance against PSCo. As we note above, the Van Wyks' complaint satisfies both of the requirements necessary to allege a nuisance. First, the Van Wyks made the allegation of unreasonableness beyond the scope of the PUC reasonableness determination. Second, the Van Wyks alleged that PSCo was made aware of the invasions interfering with the use and enjoyment of the Van Wyks' property, which were beyond the scope of what PUC had determined to be reasonable, and yet continued to conduct electricity through the line, thereby continuing to cause the invasions interfering with the use and enjoyment of the Van Wyks' property. Therefore, the Van Wyks have made sufficient averments in their complaint to survive a C.R.C.P. 12(b)(5) motion to dismiss.[12] Thus, the nuisance section of the Van Wyks' complaint sufficiently states a claim. *Prosser, supra,* at 627; *Green v. Castle Concrete Co.,* 181 Colo. 309, 314, 509 P.2d 588, 590–91 (1973); *City of Denver v. Mullen,* 7 Colo. 345, 356, 3 P. 693, 699 (1884); *see also* Dobbs, *supra,* at 1326–30 (in determining whether an invasion is substantial and unreasonable, the court must look at character of neighborhood, magnitude, frequency, or duration exceeding neighborhood norms, and utility of defendant's activity). Accordingly, we hold that the district court improperly dismissed the Van Wyks' nuisance claim.

## IV.

In sum, we hold that PUC decisions are not adjudications of property rights, and thus, do not preclude private rights of action seeking to adjudicate property rights or issues related to those rights. Furthermore, we hold that intangible intrusions upon land cannot form the basis for a taking under Article II, section 15 of the Colorado Constitution. Additionally, we hold that intangible intrusions upon property may be the basis for a cause of action for trespass only if a plaintiff can prove that physical damage to his property has resulted from those intangible intrusions. Finally, we hold that, for a claim of intentional nuisance, a plaintiff must show that a defendant's conduct was intended to produce the unreasonable invasion interfering with the plaintiff's use and enjoyment of his property complained of, or that the defendant knew that such conduct resulted in, or was substantially likely to result in, that invasion interfering with the use and enjoyment of the land.

In light of our holdings here, we conclude that the district court erred in determining that PUC's decision precluded the Van Wyks from pursuing an adjudication of their property and tort claims. We further conclude that the district court properly dismissed the Van Wyks' claims for inverse condemnation and trespass, but that the district court improperly dismissed the Van Wyks' claim of intentional nuisance. Accordingly, we affirm the court of appeals decision in part, reverse in part, and remand this case to allow the parties to litigate the nuisance claim in a manner consistent with this opinion.

12. We do not address the Van Wyks' claims raised in their brief that the noise emitted from the line is in violation of the noise abatement statute in article 12 of Title 25. Such a claim, which if true would prove a public nuisance, was not originally averred in the Van Wyks' complaint, and thus, cannot be considered here. *Rosenthal,* 908 P.2d at 1099.

Chief Justice MULLARKEY, concurring in part and dissenting in part.

I join in the court's opinion except for Part III C, concerning nuisance.

The court today concludes that the district court improperly dismissed Mark and Erica Van Wyk's claim for intentional nuisance filed against the Public Service Company of Colorado ("PSCo"). In reaching this conclusion, the court recognizes that liability for private nuisance arises from an invasion of another's use and enjoyment of that person's property that is both intentional and unreasonable. Maj. op. at 391. The court then finds that the Van Wyks' allegations of intentional conduct are sufficient to survive a motion to dismiss. Maj. op. at 395.

In my view, the allegations of unreasonableness are not sufficient to withstand a motion to dismiss. The Public Utilities Commission ("PUC") has already found, as it is required to do by statute, that the transmission line upgrade is reasonable. That issue was extensively litigated and the reasonableness determination was upheld on appeal. Under such circumstances, the Van Wyks' conclusory allegations of unreasonableness fail to support a nuisance claim and thus, the motion to dismiss was properly granted. Therefore, I respectfully dissent from Part III C of the majority opinion.

## I.

Liability for private nuisance arises from conduct that invades the use and enjoyment of another's land and is either: (1) intentional and unreasonable; (2) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct; or (3) an abnormally dangerous condition or activity. Restatement (Second) of Torts § 822 (1979); *Baughman v. Cosler*, 169 Colo. 534, 543–44, 459 P.2d 294, 299 (1969). As the majority indicates, only the first category of nuisance is at issue here. Therefore, to be liable for an intentional nuisance, a party's activities must be both intentional and unreasonable. Restatement (Second) of Torts § 822 cmt. a ("[An] invasion may be intentional but reasonable.... [In such case] there is no liability."). This rule is necessary

given the pressures inherent in contemporary society:

> Not every intentional and significant invasion of a person's interest in the use and enjoyment of land is actionable.... Practically all human activities unless carried on in a wilderness interfere to some extent with others ... and these interferences range from mere trifling annoyances to serious harms. It is an obvious truth that each individual in a community must put up with a certain amount of annoyance, inconvenience and interference.... The very existence of organized society depends upon the principle of "give and take, live and let live," and therefore the law of torts does not attempt to impose liability or shift the loss in every case in which one person's conduct has some detrimental effect on another.

*Id.* § 822.

An intentional invasion of another's property involves knowingly affirmative conduct on the part of the actor. *Baughman,* 169 Colo. at 544, 459 P.2d at 299. The actor must either act for the purpose of causing an interference, or know that an interference is resulting, or is substantially certain to result from, his conduct. Restatement (Second) of Torts, § 825. An actor's knowledge at the time of his or her conduct determines whether an interference resulting from his or her conduct is intentional or not. *Id.* at cmt. c. Thus, even if an actor is initially unaware that his or her conduct interferes with another's property, this conduct becomes intentional if the actor continues to act after learning of the interference. *Id.* at cmt. d.

The Restatement (Second) of Torts explains that an intentional invasion of another's interest in the use and enjoyment of land is unreasonable if "the gravity of the harm outweighs the utility of the actor's conduct." *Id.* § 826. Thus, a determination of the unreasonableness of an invasion "is a problem of relative values," and requires a comparative evaluation of the interests of the person harmed, the actor, and the community as a whole. *Id.* at cmts. b, c. These conflicting interests must be evaluated from an objective legal standpoint, rather than from the point

of view of the individual parties involved. *Id.* at cmt. c.

In determining the degree of harm suffered, a court must consider the extent and character of the harm, the social value given to the type of use or enjoyment invaded, and the character of the neighborhood affected. *Id.* § 827. Factors to be considered in determining the utility of the conduct include the social value of the conduct, the suitability of the conduct to the character of the locality, and the impracticality of preventing or avoiding the invasion. *Id.* § 828.

In their complaint, the Van Wyks allege that PSCo acted intentionally and unreasonably by continuing to transmit electricity through the Daniels Park Line after knowing that the transmission created a nuisance.[1] The Van Wyks contend that the Daniels Park Line upgrade led to increased electromagnetic fields, radiation waves, and noise; and, as a result, they suffered the loss of the use and enjoyment of their land.

PSCo sought to upgrade the Daniels Park Line in order to provide adequate electrical service to a large, increasingly heavily populated portion of the southeast Denver metropolitan area. PSCo filed an application with the PUC to upgrade the line pursuant to section 30–28–127, 9 C.R.S. (2000). At a subsequent hearing before the commission, the PUC acknowledged PSCo's need to improve power transfer capabilities of its system, improve system reliability, and avoid potential overloading of transformers. The PUC then considered the effect that the proposed transmission line upgrade could have on the surrounding neighborhood, including potential impacts on land use, aesthetics, property values, and noise levels. After taking all of these factors into account, the PUC

determined that the upgrade was reasonable and in the public interest.[2] That determination was upheld by this court in *Douglas County Board of Commissioners v. Public Utilities Commission,* 866 P.2d 919, 926 (Colo.1994)(finding that substantial evidence supported the PUC's conclusion that the Daniels Park Line upgrade was reasonable).

In the proceeding now before this court, the Van Wyks do not allege any harm that has not already been found reasonable by the PUC and affirmed by this court. I concede that in another case, a plaintiff might be able to state a claim for nuisance despite a prior determination of reasonableness. For example, a claim might be actionable if PSCo failed to follow the terms and conditions imposed by the PUC, or if operation of the line caused injuries not anticipated by the PUC. However, there are no such allegations before us today. Under these circumstances, the Van Wyks fail to present sufficient allegations of unreasonableness to maintain a claim of intentional nuisance.

## II.

Because a party's activities must be both intentional and unreasonable in order to be actionable under a theory of intentional nuisance, I would hold that the Van Wyks' nuisance claim was properly dismissed by the district court.

I am authorized to state that Justice RICE and Justice COATS join in the concurrence and dissent.

1. The allegations of unreasonableness are as follows:

 ¶ 15. When the lines became fully energized the property owners immediately noticed continually and unreasonably loud electrical noises coming from the power lines. During times of high humidity, including rain or snow, the electrical noise intensifies and becomes much louder.

 * * *

 ¶ 30. The actions of [PSCo] in transmitting 230kv of electrical power through the power line and the resulting noise, radiation, and

electromagnetic field constitute an intentional invasion of the property owners' rights and unreasonably interferes with their right to use and enjoy their property.

2. The PUC approved the upgrade subject to certain conditions designed to minimize possible negative impacts that the upgrade might have on individuals who reside in the surrounding area. This included requiring PSCo to use conductors and other equipment that would mitigate noise emitted from the transmission lines.